Beatrice JONES, on behalf of herself and all others similarly situated, Plaintiff,

v.

NATIONAL DISTILLERS AND CHEMICAL CORPORATION, Almaden Vineyards, Inc., Drummond C. Bell, Frederick H. Bruenner and United States Trust Company of New York as Executors of the Estate of John E. Bierwirth, William A. Dieppe, John P. McClellan, Ramsey E. Joslin, Thomas J. Grady, John F. Salisbury, Atherton Phleger and Emmett G. Solomon, Defendants.

No. 77 Civ. 3646.

United States District Court, S. D. New York.

Oct. 10, 1979.

---

Milberg, Weiss, Bershad & Specthrie, New York City, Fine, Kaplan & Black, Philadelphia, Pa., Aaron M. Fine, Allen D. Black, Seth F. Kreimer, Philadelphia, Pa., of counsel, for plaintiff.

Breed, Abbott & Morgan, New York City, Stephen R. Lang, C. MacNeil Mitchell, Eric M. Nelson, New York City, of counsel, for defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff in this action challenges the fairness of the terms of the merger whereby Almaden Vineyards, Inc. ("Almaden") became a wholly owned subsidiary of National Distillers and Chemical Corporation ("National"), with the Almaden public shareholders receiving $12.25 per share for their stock. Plaintiff's second amended complaint alleges violations by defendants of Section 14(a) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78n(a), and Rule 14a–9 promulgated by the Securities and Exchange Commission (SEC), 17 C.F.R. § 240.14a–9; violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated by the SEC, 17 C.F.R. § 240.10b–5; and breaches of fiduciary duty which are before the court on principles of pendent jurisdiction. Defendant has filed a motion challenging the legal and factual sufficiency of the complaint, moving to dismiss the Section 14(a) and Section 10(b) claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.Proc."), to grant a summary judgment dismissing the Section 14(a) and Section 10(b) claims pursuant to Fed.R.Civ.Proc. Rule 56, and to dismiss the breach of fiduciary duty claims pursuant to Fed.R.Civ.Proc. Rule 12(b)(1). For the reasons stated below, defendants' motion is denied in all respects.

*Factual Background*

In the spring of 1977, a merger was proposed between National and Almaden, whereby Almaden would become a wholly owned subsidiary of National, with public shareholders of Almaden receiving cash for their shares. At that time, National already owned 80% of the common stock of Almaden. The merger price was then negotiated between representatives of National and a special negotiating committee representing the 20% minority shareholders. The special negotiating committee consisted of two Almaden directors who were not officers or employees of Almaden or National. The committee retained two investment banking firms to assist them in the negotiations. The National representatives and the special negotiating committee representing the minority shareholders agreed on a price of $12.25 per share. During that general time, Almaden common stock was being traded at prices between $5¼ and $7⅝ on the Pacific Stock Exchange.

Almaden sent to its stockholders a proxy statement for a special stockholders' meeting to vote on the proposed merger. At this meeting, more than a majority of the public stockholders voted to approve the merger.

*Materiality*

SEC Rule 14a–9, promulgated pursuant to Section 14(a) of the Exchange Act, proscribes in proxy materials any statement which "is false or misleading with respect to any material facts, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." In *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), the Supreme Court defined a material fact: "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in decid-

ing how to vote." *Accord, Seaboard World Airlines, Inc. v. Tiger International, Inc.,* 600 F.2d 355, 360–61 (2d Cir. 1979). The Court in *TSC Industries* explained that this standard

> does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information available. 426 U.S. at 449, 96 S.Ct. at 2132 [footnote omitted].

■ In the case at hand, defendants have moved for summary judgment, arguing that the plaintiff's claims under Sections 14(a) and 10(b) should be dismissed since, on the undisputed facts, "reasonable minds could not differ as to the immateriality of the omissions" alleged by plaintiff. *Seibert v. Sperry Rand Corp.,* [1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,589, at p. 94,-522 (2d Cir. 1978) [footnote omitted]. Contrary to defendants' arguments, the court finds that there are indeed numerous disputed issues of fact concerning the materiality of certain omissions in the proxy statement in question, and that accordingly defendants' motion for summary judgment should be denied. The major disputed issues of material fact include the following:

1) *Whether the proxy statement's failure to disclose Almaden's switch from half-gallon to magnum bottles or the switch's forecasted effect on Almaden's earnings was a materially misleading omission.* The proxy statement did not disclose that Almaden was switching from 64 oz. half-gallon bottles to 51.4 oz. magnum bottles in marketing certain of its wines. Nor did the statement disclose that an increase in annual net income of $390,000 had been projected from the switch. Plaintiff argues that the

switch to magnum bottles and its projected effect on earnings were material facts which should have been in the proxy statement. Moreover, plaintiff argues, to the extent that the effect of the switch was taken into account in overall net projections, the projections rested on unreasonable assumptions which remained undisclosed. Defendants argue, that the omission of these facts is immaterial as a matter of law, since the proxy materials contained an accurate forecast of overall net income, a forecast which purportedly took into account the switch to magnums. Moreover, defendants argue, there was no need to disclose the assumptions underlying the effect of the switch upon net income projections, since the net income forecast was in fact accurate. This court is of the opinion that it is a disputed issue of material fact whether a reasonable shareholder would consider the switch to magnum bottles and its effect on earnings important, regardless of whether the overall forecast was accurate. This court is unwilling to find that reasonable minds could not differ as to the immateriality of information such as the switch to magnum bottles, even where proxy statements included an accurate overall forecast.

2) *Whether the failure to disclose that investment bankers had derived values of $13.90 and $13.00 per share for Almaden shares was a materially misleading omission.* The proxy statement in question did not disclose that investment bankers, in preparing arguments for the special negotiating committee representing minority shareholders, had derived values of $13.90 and $13.00 per share for Almaden stock. Nor did the proxy statement disclose that these figures had been advanced by the negotiators. Plaintiff argues that these figures were not unreasonable, and shareholders were entitled to know of these figures. Defendant argues that the figures were based on unreasonable assumptions and were mere stalking horses developed as negotiating ploys. This court is of the opinion that it is a disputed issue of material fact whether a reasonable shareholder would consider the figures derived by the

investment bankers as important. This court is unwilling to find that reasonable minds could not differ as to the immateriality of the figures, in particular as to whether the figures were based upon unreasonable assumptions or were mere negotiating ploys.

In summary, this court finds that there are disputed issues of material fact concerning the materiality of certain omissions in the proxy statement. Under these circumstances, defendants' motion for summary judgment must be denied.

*Damages*

In *Seaboard World Airlines, Inc. v. Tiger International, Inc., supra,* the Second Circuit recently stated that " 'when market value [of stock] is available and reliable, other factors should not be utilized in determining whether the terms of a merger [are] fair.' " *Id.* at 361 (bracketed material in original) (quoting *Mills v. Electric Auto-Lite Co.,* 552 F.2d 1239, 1247 (7th Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977)). The court in *Seaboard* explained that "[u]nderlying such an approach is the 'efficient market theory,' which, briefly stated, is that in a free and actively traded market, absent compelling reasons to believe otherwise, the market price is held to take account of asset value as well as the other economic, political, and financial factors that determine 'value.' " *Seaboard World Airlines, Inc. v. Tiger International, Inc., supra,* at 361–62. Defendants argue that, on the uncontested facts, summary judgment dismissing plaintiff's federal securities claims should be granted since the market value of Almaden shares was *less* than the amount actually received by shareholders in the merger.

■ This court finds that there is a disputed issue of fact whether the market value of Almaden stock was reliable, as required by *Seaboard.* In particular, plaintiff offered the affidavit of John Torkelsen, a Chartered Financial Analyst, stating that the fair market value of Almaden shares exceeded the $12.25 which minority shareholders received in the merger. In Torkelsen's opinion, the market value of Almaden

shares was not a reliable index of their true value because of Almaden's policies of sacrificing profit for volume, National's 80% control of Almaden, and the surge in earnings during National's first year of ownership of Almaden after the merger.

Here, defendants argue that Torkelsen's opinion is based on his wholly conclusory statement, made without reference to any authoritative sources, and makes unsupported assumptions. Moreover, defendants argue, Torkelsen's opinion considered irrelevant and erroneous factors as a matter of law and bases his conclusions on facts contrary to the actual facts.

■ Of course, a court may grant a "summary judgment against a party who relies solely on an expert's opinion that has no more basis in or out of the record than . . . theoretical speculations" and that makes "unsupported assumptions." *Merit Motors, Inc. v. Chrysler Corp.,* 187 U.S.App. D.C. 11, 18, 569 F.2d 666, 673 (D.C.Cir. 1977). However, this court is not of the opinion that Torkelsen's affidavit is so based on theoretical speculations and unsupported assumptions as to require a granting of summary judgment. Considering Torkelsen's affidavit, and the entire record before the court on this motion, this court is not convinced that there is no disputed issue as to the reliability of the market value of Almaden stock. While defendant's numerous criticisms of Torkelsen's opinion are not to be taken lightly, the weight to be given Torkelsen's opinion in determining the reliability of market value is an issue best left to the jurors to decide in trial.

Defendants also argue that a finding of reliability is required by a comparison of the facts in this case with those in *Mills v. Electric Auto-Lite Co.,* 552 F.2d 1239 (7th Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977), where the Seventh Circuit found that the evidence did not demonstrate that market prices were an unreliable indicator of value. While the particular facts in *Mills* may not have demonstrated unreliability, this court does not

read *Mills* as requiring that, as a matter of law, similar claims must be dismissed without trial. Accordingly, defendants' motion for summary judgment is denied.

*Standing*

■ Defendants have moved to dismiss plaintiff's claims on the ground that plaintiff lacks standing to complain under federal securities laws. In particular, defendants note that plaintiff did not vote on the merger, did not read the proxy statement prior to the vote, and did not rely upon the proxy statement.

The general rule concerning reliance in Section 14(a) cases was set forth by the Supreme Court in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384–85, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970), where the Court stated that there is no need for

> proof of whether the defect actually had a decisive effect on the voting. Where there has been a finding of materiality, as shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.

As the Second Circuit explained in *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 374 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973), the Supreme Court in *Mills* "established a presumption of reasonable reliance in order to avoid an overly difficult burden of proof." In the case at hand, defendants argue that the *Mills* presumption of reliance has been rebutted with respect to the individual plaintiff.

Defendants' argument must fail in light of this court's decision in *Clayton v. Skelly Oil Co.*, [1977–78 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 96,269 (S.D.N.Y.1977). In *Clayton*, a Section 14(a) action, the defendants moved to dismiss on the ground that plaintiffs, sophisticated investors who opposed a merger, had not been deceived or misled by the proxy materials in question. The court wrote, in a passage directly applicable to the case at hand:

> Basically, the Court is called upon to decide whether a plaintiff, not personally deceived by defendant's fraud, may nevertheless maintain an action under the securities acts since the deception of others may have caused damage to him. The answer is plainly in the affirmative and the rationale apparent: where the charged deception adversely affects the market for a particular stock, plaintiff's personal reliance on the misstatements and/or omissions may be irrelevant to establish causation with his injury.

*Id.* at 92,747. Here, it may similarly be reasoned that the deception of others by the alleged material omissions in the Almaden proxy statement may have caused damage to plaintiff by misleading others into voting to approve the merger at an allegedly unfair price.

The Second Circuit has also held in analogous situations that the reliance of the individual plaintiff is irrelevant where the plaintiff may have been damaged by the reliance of others. *See Herbst v. International Telephone & Telegraph Corp.*, 495 F.2d 1308, 1316 (2d Cir. 1974); *Vine v. Beneficial Finance Co.*, 374 F.2d 627, 635 (2d Cir.), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967).

Defendants point to several cases which appear to reach results contrary to the ruling in *Clayton*. Upon close examination, however, all of these cases are readily distinguishable. In several of these cases, plaintiff's proof of damages depended upon the individual reliance of the plaintiff. *See Petersen v. Federated Department Stores*, 416 F.Supp. 466, 474–75 (S.D.N.Y.1976) (insiders discouraged plaintiff from taking advantage of tender offer); *Pierre J. LeLandais & Co. v. MDS–Atron, Inc.*, 387 F.Supp. 1310, 1331 (S.D.N.Y.1974) (damage calculation based on amount obtainable in statutory appraisal proceeding), *aff'd in part*, 543 F.2d 421 (2d Cir. 1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 777 (1977). In other cases, plaintiff sought to void an election of corporate officers, a situation which obviously raises unique con-

siderations. *See Klaus v. Hi-Shear Corp.,* 528 F.2d 225, 232 (9th Cir. 1975); *Jacobs v. Airlift International, Inc.,* 440 F.Supp. 540, 542 (S.D.Fla.1977).

### Rule 10b–5 Claim

■ Plaintiff's claim based on section 10(b) of the Exchange Act and Rule 10b–5 alleges that two Almaden directors who were also National officers intentionally deceived the Almaden board, the special negotiating committee, and Almaden minority shareholders by failing to disclose that National had authorized the payment of up to $12.50 per share for Almaden stock, twenty-five cents per share more than the amount actually paid. Defendant has moved to dismiss this Rule 10b–5 claim, arguing that the claim alleges breaches of fiduciary duty which are actionable under state law but not federal security laws.

In *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 473–74, 97 S.Ct. 1292, 1301, 51 L.Ed.2d 480 (1977), the Supreme Court held that a claim "states a cause of action under any part of Rule 10b–5 only if the conduct alleged can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." The Court's holding in *Santa Fe Industries* makes a showing of manipulation or deception a requirement in a Rule 10b–5 action, but does not, as defendants seemingly maintain, bar all claims related to breaches of fiduciary duty under state law. As the Second Circuit explained in *Goldberg v. Meridor,* 567 F.2d 209, 221 (2d Cir. 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978), in *Santa Fe Industries* the Supreme Court was "drawing the line so as to require plaintiffs to make claims of nondisclosure or misleading disclosure, not as directing the lower courts to dismiss cases where it was claimed that fiduciaries had failed to disclose their self-dealing or had made a misleading disclosure." In the case at hand, plaintiff alleges that the two Almaden directors engaged in deception by failing to disclose the National authorization of $12.50 per share and the voting on the Almaden board to approve the merger. Where, as here, breaches of fiduciary duty may also involve manipula-

tion or deception, a plaintiff may advance claims under both Rule 10b–5 and state law.

Defendant cites a number of cases in which breaches of fiduciary duty were held not to be actionable under federal securities law. For example, in *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1084 (2d Cir. 1977), the Second Circuit stated that "violation of any such state-law fiduciary duties, including non-disclosure of conflict of interest or unfairness of a conversion price, will not support a claim of constructive fraud under § 14(a)." However, in *Brown,* as in other cases cited by defendants, the court addressed the situation where there was no deception or material misstatement or omission, and did not require dismissal of an action where plaintiff did allege deception or material misstatement or omission accompanying the alleged breach of fiduciary duty.

■ Defendant advances a second challenge to plaintiff's Rule 10b–5 claim. Defendant argues that plaintiff failed to plead a causal connection between the alleged fraud and the subsequent harm allegedly suffered by minority shareholders. Of course, the court recognizes that "[c]ausation remains a necessary element in a private action for damages under Rule 10b–5." *Titan Group, Inc. v. Faggen,* 513 F.2d 234, 239 (2d Cir.), *cert. denied,* 423 U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975). In the case at hand, plaintiff's second amended complaint alleges that "[a]s a result of the defendants' conduct as alleged herein, plaintiff and the members of the class have been damaged." It may well be that plaintiff's bare allegation of causation leaves something to be desired. But this court is not willing to dismiss plaintiff's Rule 10b–5 claim, for the allegation of causation, while somewhat threadbare, is not fatally so.

An elaborate allegation of causation may not be necessary in a case involving allegations of material omissions. As the Supreme Court noted in *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), the "obligation to disclose and [the] withholding

of a material fact establish the requisite element of causation in fact." With respect to a Section 14(a) action, the Court stated in *Mills v. Electric Auto-Lite Co., supra,* 396 U.S. at 385, 90 S.Ct. at 622. "Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." In light of these statements, perhaps a bare allegation of causation will suffice.

*Pendent Jurisdiction*

Defendants argue that if plaintiff's federal claims are dismissed, then pendent jurisdiction over the state claims cannot be asserted. Since the court is not dismissing the federal claims, this issue need not be addressed.

*Conclusion*

For the reasons stated above, the motions to dismiss pursuant to Fed.R.Civ.Proc. 12(b)(6), 56, and 12(b)(1) are hereby dismissed.

SO ORDERED.