**TEXAS PARTNERS, etc., et al.,
Plaintiffs-Appellants,**

v.

**CONROCK CO., etc., et al.,
Defendants-Appellees.**

**No. 80–5764.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1982.

Decided Aug. 30, 1982.

---

Frederick P. Furth, Furth, Fahrner, Bluemle & Mason, San Francisco, Cal., for plaintiffs-appellants.

William J. Meeske, Latham & Watkins, John A. Blue, Adams, Duque & Hazeltine, Los Angeles, Cal., argued, for defendants-appellees; David F. Pursel, Charles Griffin Cale, Los Angeles, Cal., on brief.

Before CHAMBERS, KENNEDY and SCHROEDER, Circuit Judges.

KENNEDY, Circuit Judge:

Appellee Conrock Co. is a Delaware Corporation engaged primarily in extracting, processing, and selling rock, sand, and gravel in aggregate form or, with a mixture of cement, as ready-mixed concrete. Appellee California Portland Cement Co. ("CPC"), a cement manufacturer, owns approximately 33.5 percent of Conrock's stock and sells cement to Conrock. In March 1980, Conrock mailed its shareholders a proxy statement in connection with its April annual meeting. The proxy statement described two anti-takeover amendments to Conrock's Certificate of Incorporation and bylaws to be proposed for shareholder approval at the annual meeting.

The amendment to the Certificate requires the affirmative vote of the holders of at least 60 percent of the outstanding shares of the Company to approve certain business combinations, namely mergers, reorganizations, consolidations, and sales or leases of assets, with "related persons," defined as those persons or entities owning, directly or indirectly, 5 percent or more of the Company's stock. Further, the 60 percent vote must include the affirmative vote of at least 50 percent of the voting shares

held by shareholders other than the related person. The amendment cannot be modified or repealed without the vote of more than 60 percent of the shares. The amendment to the Company's bylaws, related to the first anti-takeover proposal, requires a majority of the directors to be outside directors, that is, persons not employed by the corporation or by a related person and not having direct or indirect material business relationships with the Company. At the annual meeting in April 1980, the two proposals were approved by approximately 84 percent of the outstanding shares of the Company, with a little more than 90 percent of the shares voting.

Appellant Texas Partners, a Texas limited partnership, and appellant San Francisco Partners II, a California limited partnership, together owned 3.7 percent of Conrock's outstanding stock. In early April, prior to the annual meeting, appellants brought a suit against Conrock, CPC, and Conrock's directors, claiming the proxy solicitation violated section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) (1976),[1] and Rules 14a–3 and 14a–9, 17 C.F.R. §§ 240.14a–3, 240.14a–9 (1981),[2] because it contained false and misleading statements of material fact and omitted material facts necessary to make the statements not misleading. The complaint also alleged breach of fiduciary duty under state common law. Appellants sought a preliminary injunction to halt Conrock's scheduled annual meeting, and permanent relief. Af-

ter a hearing the district court denied the preliminary injunction. Conrock and CPC then moved for summary judgment, and the district court stayed all discovery until the hearing on and submission of the summary judgment motion. Judge Real granted appellees' motion for summary judgment and adopted findings of fact and conclusions of law submitted by appellees, finding that there were no genuine issues of fact in dispute, and that the proxy solicitation contained no material misstatements and omitted no material information. We find that the district court erred in foreclosing discovery prior to presentation of the summary judgment motion, and that material issues of disputed fact exist that preclude summary judgment at this stage.

We address the three principal alleged deficiencies in the proxy materials issued by Conrock. Appellants contend first that the amendment to the Certificate was intended primarily to prevent the ouster of Conrock's management either directly or through the purchase of CPC's interest in Conrock. Appellants claim the interest of CPC in Conrock was more than passive, and that the amendment was intended to insulate both Conrock's management and that of CPC. Second, and relatedly, appellants challenge the failure to disclose an earlier offer by Martin-Marietta Corporation to purchase the largest share of CPC's stock. Third, appellants attack Conrock's failure to disclose that its primary real estate assets were substantially undervalued, which en-

---

1. Section 14(a) of the 1934 Act provides:

   It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

   15 U.S.C. § 78n(a) (1976).

2. Rule 14a–3 specifies the information to be furnished to stockholders in connection with any solicitation. Under Rule 14a–9(a):

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a–9 (1981).

hanced Conrock's attractiveness as a take-over candidate and possibly could have provided a substantial premium to Conrock's shareholders in the event of a takeover.

The district court erred in granting summary judgment for appellees without affording plaintiffs-appellants the opportunity to proceed with discovery. Although Rule 56(e) of the Federal Rules of Civil Procedure permits and does not mandate general discovery before the granting of summary judgment,[3] when the issues are complicated or motives and intent are important, "[p]utting plaintiffs to the test . . . without ample opportunity for discovery is particularly disfavored." *Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597, 602 (9th Cir. 1976). Appellants should be afforded reasonable access to potentially favorable information prior to the granting of summary judgment, *see Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980), because on summary judgment all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary judgment motion, *Heiniger v. City of Phoenix*, 625 F.2d 842, 843 (9th Cir. 1980); *see Parrish v. Board of Commissioners of the Alabama State Bar*, 533 F.2d 942, 949 (5th Cir. 1976). In *Zell v. Intercapital Income Securities, Inc.*, 675 F.2d 1041 (9th Cir. 1982), we recently reversed a grant of summary judgment in a suit challenging proxy statement disclosures and found that granting summary judgment without permitting reasonable discovery was premature, because the challenged information was not so unimportant as to be immaterial as a matter of law.

Drawing all inferences in favor of appellants, we find that appellants have established triable issues of material fact, at least in this stage of discovery. The amendment to Conrock's Certificate of Incorporation can be characterized as an anti-takeover device because, as the proxy statement disclosed, it might discourage unrelated persons from making a tender offer for Conrock's shares. A tender offer often is only the first part of a plan to acquire completely the target company, with the second stage being a merger of the two companies in which remaining minority shareholders are purchased or "frozen out" of the new subsidiary. *See* Gilson, *The Case Against Shark Repellent Amendments: Structural Limitations on the Enabling Concept*, 34 Stan.L.Rev. 775, 783 (1982); Brudney & Chirelstein, *A Restatement of Corporate Freezeouts*, 87 Yale L.J. 1354, 1359–61 (1978). As Brudney and Chirelstein suggest, the two-step takeover in the form of a tender offer followed by a merger is analogous to a merger with or a unitary purchase of assets by an unrelated company which is approved by a majority of the company's shareholders. 87 Yale L.J. at 1361–65. Conrock's proposed requirement that a merger or other combination with a related person be approved by at least 60 percent of the outstanding shares and at least 50 percent of the outstanding shares held by persons other than the related person would make the second step of such a tender offer acquisition more difficult. A second-step acquisition without the consent of Conrock's management would be especially difficult because the proposal requires the vote of 60 percent of all shares, not just those voting, and because Conrock's directors and officers owned between 11 percent and 13 percent of the shares.[4] *See* Gilson, *supra*, 34 Stan.L.Rev. at 783–85. The super-majority provision would not apply if the Board unanimously approved the combination prior to the person's acquisition of 5 percent or more of Conrock's stock.

---

**3.** Rule 56(e) sets out the requirements for affidavits submitted in connection with a summary judgment motion, and provides that "[t]he court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." Fed.R.Civ.P. 56(e).

**4.** The proxy statement reports two different figures for the amount of shares held by Conrock's officers and directors, 13.2 percent and 11.4 percent. Though appellants questioned this, it does not appear that appellees or the district court explained the discrepancy.

In addition to impeding tender offer takeover attempts and insulating current management, the super-majority amendment here also would have insulated CPC's management. CPC is Conrock's largest shareholder, owning 34 percent of the stock. A potential acquirer might have sought to acquire or gain control of CPC in order to obtain a substantial portion of the majority stock needed for a first-step tender offer, or simply to exercise its control of Conrock's Board and thereby design a merger. By deterring combinations of Conrock with related persons, the amendment deterred the acquisition of CPC. The amendment to Conrock's bylaws requiring a majority of outside directors also would inhibit takeovers by preventing a purchaser of a large block of Conrock's shares, through a tender offer or acquisition of CPC, from acquiring control of Conrock's Board of Directors.

■ Conrock's proxy solicitation contained certain disclosures revealing the anti-takeover character of the two amendments. The proxy statement admitted that the super-majority requirement might discourage unrelated parties from making a tender offer, or might make such an offer more expensive, thereby lowering the offer price to shareholders. Shareholders also were informed that the amendment would make the removal of incumbent management more difficult and that a request by an outsider for Board approval of a transaction prior to becoming a related person could present a conflict of interest for Board members. Appellants contend the proxy disclosures failed to reveal that the true motive behind the anti-takeover proposals was the desire of both Conrock and CPC to prevent the ouster of Conrock's management either directly or as a result of the purchase of CPC's interest in Conrock. Appellants refute the district court's finding and appellees' characterization of CPC's investment in Conrock as passive and claim the true relationship between the companies was one of self-dealing. The super-majority proposal could have deterred takeover attempts of both Conrock *and* CPC. The closeness of the relation between Conrock and the management of CPC might

have been material to shareholders voting on the amendment. *Cf. Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1282 (9th Cir. 1982) (summary judgment for defendants in suit challenging proxy statement inappropriate where material issue of fact existed as to relationship between tender offeror and target company management). The district court erred in foreclosing discovery concerning this relation.

■ Appellants also challenge the failure to disclose the fact that in 1979, the year before the proxy proposal, Martin-Marietta Corporation offered to buy the stock of CPC's largest shareholder. On appeal appellees apparently admit that such an offer was made. The proxy statement did not address any such past activity, saying only that "the Board is not aware of any indirect effect, pending or threatened, to attempt to take over control of the Company by acquiring control of California Portland." The factual circumstances surrounding the offer by Martin-Marietta must be examined in further proceedings. If it was a firm offer made with the purpose of acquiring control of Conrock, or if control of CPC would present a significant continuing threat to the control of Conrock, perhaps inherent in the ownership of Conrock's supplier and major shareholder, then the offer might have been material to a vote on the anti-takeover proposals and might have warranted disclosure in the proxy statement. *See South Coast Services Corp. v. Santa Ana Valley Irrigation Co.*, 669 F.2d 1265, 1273 (9th Cir. 1982). The Martin-Marietta offer also might have been material if it had been a significant stimulant to Conrock's decision to seek the amendments. The proxy solicitation stated that an entity could acquire control of CPC and, having done so, could then seek to accomplish a non-negotiated business combination with Conrock, which might not be in the best interests of Conrock's remaining shareholders. It is at least arguable at this stage that disclosure of the possible acquisition of Conrock through CPC in this context did not adequately disclose the extent to which the anti-takeover proposal insulated CPC.

Further, by not disclosing any past firm offers to acquire control of CPC, this statement and the disclaimer of knowledge of pending attempts to acquire CPC could have been incomplete and misleading to shareholders. The issue must await further development.

Finally, appellants have established an issue warranting further discovery and perhaps trial regarding the nondisclosure of the fact that Conrock's assets were greatly undervalued, that is, that their market value greatly exceeded their book value. Appellants allege that Conrock's real estate was undervalued by approximately $200 million, and that as a real estate-related company with substantially undervalued assets, Conrock was a very attractive takeover target. Appellants contend the proxy statement at least should have included a general statement of the undervaluation of Conrock's real estate because this would have been material to a shareholder voting on proposals that would reduce Conrock's attractiveness as a potential takeover target.

In *South Coast Services Corp. v. Santa Ana Valley Irrigation Co., supra*, we held that disclosure of an estimate of the fair market value of a company's assets by the Board of Directors was not required by Rule 14a–9 or section 14(a) because SEC policy then in effect discouraged disclosure of appraised asset values and because, in any event, the appraisals were neither based on objective, reasonably certain data nor prepared by a qualified expert. 669 F.2d at 1270–73. This does not necessarily foreclose at this stage appellants' argument that at some point in the proxy contest a statement that the assets were substantially undervalued should have been disclosed. Appellants point to new SEC policy as authorizing the inclusion of asset valuations in proxy statements, *see* SEC Release No. 34–16833, Fed.Sec.L.Rep. (CCH) ¶ 24,117 (May 23, 1980). The release only applies to appraisals made in good faith and on a reasonable basis that are included in proxy materials in contests involving the liquidation of company assets, but it might indicate a relaxing of SEC public formal policy. Im-

portantly, appellants do not appear to contend that Conrock must have disclosed an estimate of the current value of the real estate or an estimate of the amount of overvaluation. Appellees' reliance on cases rejecting disclosure of asset appraisals, *e.g., South Coast Services, supra; Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281 (2d Cir. 1973), is thus inappropriate. A general statement of undervaluation might have been material to shareholders to inform them of the attractiveness of Conrock as a takeover candidate and the importance of the anti-takeover amendments. We need not address the issue of current SEC policy, and appellants' contention that a general statement of undervaluation should have been disclosed will await further proceedings.

The district court's granting of summary judgment on the above issues without providing discovery was an abuse of discretion and premature. Appellants have demonstrated at this stage the possible existence of genuine issues of material fact, and the disposition of the issues above must await further discovery and perhaps trial.

REVERSED and REMANDED.