## In re PHLCORP SECURITIES TENDER OFFER LITIGATION.

### No. 88 Civ. 0306(PNL).

United States District Court, S.D. New York.

Dec. 2, 1988.

Milberg Weiss Bershad Specthrie & Lerach, New York City (David Bershad, of counsel), Greenfield & Chimicles, New York City (C. Oliver Burt, III, of counsel,

Haverford, Pa.), Abbey & Ellis, Goodkind Wechsler Labaton & Rudoff, Harvey Greenfield, Schoengold & Sporn, New York City, for plaintiff.

Weil, Gotshal & Manges, New York City (Dennis J. Block, H. Adam Prussin, Dushica B. Protic, Timothy J. Lawliss, of counsel), for defendants Leucadia Nat. Corp., Ian Cumming and Joseph Steinberg.

Pavelic & Levites, New York City (Raymond A. Levites, of counsel), for defendants PHLCORP, James Kimball and Michael Lynch.

LEVAL, District Judge.

Defendants move, pursuant to Fed.R.Civ. P. 12(b)(6) and 9(b), to dismiss the consolidated amended complaint (hereafter the "complaint") for failure to state a claim upon which relief can be granted and failure to plead fraud with particularity.

## BACKGROUND

The complaint alleges fraud in violation of § 14(e) of the Securities Exchange Act, 15 U.S.C. § 78n(e), and state law claims for breach of fiduciary duty to corporate stockholders. The defendants are Leucadia National Corporation ("Leucadia"); PHLCORP, Inc. ("PHLCORP"); Ian M. Cumming and Joseph S. Steinberg, officers and directors of Leucadia and PHLCORP; and James N. Kimball and Michael T. Lynch, who are non-employee directors of PHLCORP. The plaintiffs are present or former shareholders of PHLCORP.[1] They bring this action on behalf of a putative class of all shareholders of PHLCORP during the period January 14, 1988 through February 24, 1988.

The defendant PHLCORP was formerly known as Baldwin–United Corp. On November 13, 1986, the Company emerged from reorganization proceedings under Chapter 11 of the Bankruptcy Code. As a result of claims which Leucadia held against Baldwin–United which Leucadia converted into common stock in the reorganization proceedings, Leucadia was the largest and controlling shareholder of PHLCORP when it emerged from bankruptcy, owning 39% of PHLCORP shares. Fourteen months later, on January 21, 1988, Leucadia made a tender offer for PHLCORP's stock, which is the subject of this suit.

The complaint alleges that during the period preceding its tender offer, Leucadia manipulated the stock price of PHLCORP downward. The lowering of the price of PHLCORP stock was accomplished by causing PHLCORP to (1) take a non-recurring charge against income of $8.6 million in connection with the restructuring of its trading stamp business; (2) take a realized investment loss of $3.6 million after taxes to restructure its investment portfolio; and (3) incur a charge of more than $7.6 million, arising from the discontinuance of its accident and health insurance business. It is alleged that PHLCORP also delayed certain favorable transactions so that the resulting gains would not affect PHLCORP's statements until after the tender. Finally, plaintiffs allege that defendants caused PHLCORP to omit from its books the increase in value of surplus notes that PHLCORP held in Empire Mutual Insurance Group, a highly profitable insurance mutual that was subsequently converted into a stock company under the name Empire Insurance Company. They contend that the value reported for the surplus notes was artificially low as a result of regulations of the New York Superintendent of Insurance. After the close of the last quarter for which a report was published prior to the tender offer, PHLCORP exchanged the notes for common shares of Empire at a substantial profit. Prior to the tender, defendants obtained copies of an appraisal performed by the actuarial firm of Tillinghast, Nelson & Warren, Inc. for the Superintendent of Insurance, which valued Empire at between $61.9 million and $64.8 million as of September 30, 1985. This implied a value attributable to Empire of $3.52 to $3.69 per share of PHLCORP.

---

1. The plaintiffs are David L. Wares, Dennison Veru, Jack Feiler, Daniel Chalfin, Mosie Katz and Rodney B. Shields. Separate actions were originally filed by each of the plaintiffs, but were consolidated by Pretrial Order No. 2, entered April 12, 1988.

The complaint alleges that by this manipulation, Leucadia was able to purchase stock in PHLCORP in the tender offer at a "grossly unfair" price of $5 a share. The offer, seeking 5.2 million shares of PHLCORP at $5, began on January 21, 1988 and was successfully concluded on February 24, 1988. By this purchase Leucadia increased its ownership of PHLCORP stock from 39% to 63%.

Federal jurisdiction is predicated solely on the claim under § 14(e) of the Exchange Act. The complaint alleges that various documents issued by Leucadia in connection with its purchase offer (a press release announcing the offer, the Offer to Purchase, and the Schedules 14D–1 and 14D–9) contain untrue statements of material facts and omit to state material facts necessary in order to make the statements made not misleading. It alleges four misstatements: (1) the tender offer documents falsely state that the offering price is "fair" and fail to disclose that it is "unfair"; (2) the press release falsely asserts that PHLCORP's board of directors includes "independent directors"; (3) the tender offer documents do not state that the offer violates insider trading prohibitions; and (4) the tender offer documents fail to disclose the completed Empire appraisal and misleadingly imply that the appraisal of Empire had not been completed by stating:

> During 1986, the Superintendent selected an independent actuarial consulting firm to appraise the fair market value of Empire. The Superintendent has not completed his appraisal process. (Offer to Purchase)

Defendants move to dismiss, arguing that none of the alleged misstatements or omissions is material or actionable under § 14(e), and that the plaintiffs lack standing. They contend that after dismissal of the federal claims, the state law claims should be dismissed for lack of jurisdiction.

## DISCUSSION

■ A motion to dismiss under Fed.R. Civ.P. 12(b)(6) is directed to the sufficiency of the pleading. Documents attached to the complaint as exhibits or incorporated by reference may be considered, *Field v. Trump*, 850 F.2d 938, 949 (2d Cir.1988), but other documents may not. *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir.1985). The court must accept the allegations of the complaint as true and construe all reasonable inferences in plaintiff's favor. *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A complaint may be dismissed only when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Philips Business Systems, Inc. v. Executive Communications Systems, Inc.*, 744 F.2d 287, 290 (2d Cir.1984) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

### A. *Misleading Statements and Omissions*

A complaint seeking damages under § 14(e) must allege that (1) defendants misrepresented or omitted to state material facts in connection with the purchase or sale of a security; (2) the shareholders relied to their detriment upon the misrepresentations or omissions; and (3) the misrepresentations or omissions were made with scienter. *Chris Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 362–63 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 232, 38 L.Ed.2d 148 (1973); *Diamond v. Arend*, 649 F.Supp. 408, 412 (S.D.N.Y. 1986); *Caleb & Co. v. E.I. DuPont de Nemours & Co.*, 599 F.Supp. 1468, 1474 (S.D.N.Y.1984). A misstatement or omission is "material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding" whether to accept the tender offer. *Prudent Real Estate Trust v. Johncamp Realty, Inc.*, 599 F.2d 1140 (2d Cir.1979); *cf. TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

■ The allegation that defendants falsely characterized the tender offer price as fair and failed to disclose that it was unfair does not state a claim under § 14(e). In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Supreme Court held that no cause of action under the federal securities laws was stated by the claim that shareholders were treated unfairly in a merger. It is a necessary corollary to that rule that where the defendant has otherwise made full disclosure its false characterization of a transaction as fair does not make out a claim under § 14(e). *Pross v. Katz*, 784 F.2d 455, 458 (2d Cir.1986). Thus the courts in this circuit have uniformly struck down allegations that an offering document fails to discuss the fairness of an offered price as not stating a claim for securities fraud. *See Data Probe Acquisition Corp. v. Datatab, Inc.*, 722 F.2d 1, 4 (2d Cir.1983) ("the fairness or unfairness to shareholders of a transaction engaged in by a control group is irrelevant under Section 14(e)"), *cert. denied*, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984); *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1084 (2d Cir. 1977); *Klausner v. Ferro*, 604 F.Supp. 1188, 1195 (E.D.N.Y.1985), *aff'd mem.*, 788 F.2d 3 (2d Cir.1988); *Billard v. Rockwell International Corp.*, 526 F.Supp. 218, 221 (S.D.N.Y.1981) ("failure to 'disclose' that an offered price is unfair is not a violation"), *aff'd*, 683 F.2d 51 (2d Cir.1982); *Kreindler v. Sambo's Restaurants, Inc.*, [1981–82 Transfer Binder] Fed.Sec.L.Rep. ¶ 98,312, at 91,959 (S.D.N.Y.1981) [1981 WL 1684] ("failure to characterize as a 'pyramid scheme' or as 'fraudulent' the conduct it fully described in such releases and reports; and the failure to predict the ultimate collapse of the corporation ... not actionable under the securities laws").

■ The allegation based on PHLCORP's statement that it has "independent" directors is also without substance. In some circumstances, failure to disclose a conflict of interest can make out a violation of the federal securities laws. *Kas v. Financial General Bankshares,*

*Inc.*, 796 F.2d 508, 511–17 (D.C.Cir.1986); *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 69 (D.C.Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 569, 66 L.Ed.2d 471 (1980). In this case, however, defendants' have not falsely represented the status of the "independent directors." The Press Release announcing the tender offer states: "Leucadia further stated that it anticipates that PHLCORP's independent directors will regard the offer to be fair and will recommend acceptance by PHLCORP's shareholders." The Offer to Purchase explains at several points that the fairness of the transaction was reviewed by a "Special Committee" consisting of those "members of the PHLCORP Board of Directors who (although nominated for election by Leucadia at the 1987 Annual Meeting) are not employed by or otherwise affiliated with Leucadia or PHLCORP." Offer to Purchase at 2. The Offer to Purchase further states that Leucadia "may be deemed to control PHLCORP," *id.* at 1, and that "Leucadia's principal executive officers serve as directors and principal executive officers of PHLCORP and ... are principal shareholders of Leucadia." *Id.* at 5–6. Plaintiffs do not allege that any of these representations are false or do not fully disclose the relationship of the "independent directors" to PHLCORP and Leucadia.

The Court of Appeals has held that the presence of arguably misleading statements in a tender offer are not material where the statement also contains "clear representations" of the pertinent facts. *MacFadden Holdings, Inc. v. JB Acquisition Corp.*, 802 F.2d 62, 71 (2d Cir.1986); *see also Data Probe Acquisition Corp. v. Datatab, Inc.*, 722 F.2d 1, 5–6 (2d Cir.1983), *cert. denied*, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984). The securities laws focus on disclosure of the relevant underlying facts. As long as these are disclosed, the securities laws do not "require[ ] insiders to characterize conflict of interest transactions with pejorative nouns or adjectives." *Goldberg v. Meridor*, 567 F.2d 209, 218 n. 8 (2d Cir.1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978);

*Chock Full O'Nuts Corp. v. Finkelstein,* 548 F.Supp. 212, 218 (S.D.N.Y.1982); *Klamberg v. Roth,* 473 F.Supp. 544, 551 (S.D.N.Y.1979). In this case, defendants prominently disclosed the conflicts of interest. In the face of this disclosure, the allegation that defendants improperly characterized the directors as "independent" when they were nominated by Leucadia fails to state a claim under § 14(e). *See Field v. Trump,* 850 F.2d 938, 950 (2d Cir.1988).

■ The third allegation is that defendants failed to state that the Tender Offer violates insider trading prohibitions. The amended complaint does not further elucidate in what respect defendants have engaged in illegal insider trading. Just as defendants' characterizations of the Offer as fair and of the directors as "independent" is not actionable, so plaintiffs' allegation that defendants failed to state that they were violating the insider trading laws, where there is no allegation that defendants omitted to disclose a fact, does not state a claim for relief under § 14(e). *Avnet, Inc. v. Scope Industries,* 499 F.Supp. 1121, 1125–26 (S.D.N.Y.1980); *Nemo v. Allen,* 466 F.Supp. 192, 195 (S.D.N.Y.1979) (no requirement that "actions be characterized as criminal in nature. All that need be disclosed are the facts from which a stockholder may draw its own conclusion.").

The most significant claim of the complaint relates to the appraisal of Empire by Tillinghast, Nelson & Warren. It appears there are two facets to this part of the complaint: (i) false statements about the status of the appraisal and (ii) misleading representations as to the value of Empire, resulting in part from the failure to disclose the information in the appraisal.

■ The proxy report does not misrepresent the status of the Tillinghast report. Although plaintiffs allege that the Offer to Purchase states that the appraisal is not yet complete, that statement does not come

from the text of the offer but from notes to consolidated financial statements in a Report of Independent Accountants dated one year earlier. This Report is dated March 4, 1987 and refers to Empire's financial position at December 31, 1986. This is not a case of "buried facts." *See, e.g., Gould v. American Hawaiian Steamship Co.,* 331 F.Supp. 981, 995 (D.Del.1971). The notes do not purport to and cannot be construed as presenting the status of the appraisal as of the date of the offer.[2] The Court of Appeals has instructed not to "subject every tender offer to a nit-picking judicial scrutiny." *Data Probe Acquisition Corp. v. Datatab, Inc.,* 722 F.2d 1, 5 (2d Cir.1983), *cert. denied,* 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984). The allegation that plaintiffs falsely stated that the appraisal was not yet complete should be dismissed.

■ The allegation that defendants should have disclosed the appraisal presents a far more difficult question. In general the law does not require the disclosure of asset appraisals or other "soft information" in tender offer materials. This is because of a distrust of the reliability of such materials and a perception that they are too speculative to be considered fact. Indeed, the SEC long took the position that financial projections, asset appraisals, and other soft information should not be disclosed in proxy statements, tender offers and other disclosure documents, on the ground that they were likely to mislead investors. *Walker v. Action Industries, Inc.,* 802 F.2d 703, 707 (4th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1000 (1987); *South Coast Services Corp. v. Santa Ana Valley Irrigation Co.,* 669 F.2d 1265, 1271 (9th Cir.1982). Until 1976, the SEC listed "predictions as to specific future market values, earnings or dividends" as "examples of what, depending upon particular facts and circumstances, may be misleading in proxy statements." SEC Sec.Exch.Act Rel. No. 5276 (Jan. 30, 1956), 21 Fed.Reg. 578 (1966). The Second Circuit observed in 1973, "It has long been

---

**2.** Indeed, plaintiffs apparently abandon this allegation in their Memorandum in Opposition to the Motion.

an article of faith among lawyers specializing in the securities field that appraisals of assets could not be included in proxy statements." *Gerstle v. Gamble–Skogmo, Inc.,* 478 F.2d 1281, 1293 (2d Cir.1973). The courts naturally refused to hold offerors liable for doing what the SEC commanded. *See Mendell v. Greenberg,* 612 F.Supp. 1543, 1550 (S.D.N.Y.1985); *Gerrity v. Chapin,* Fed.Sec.L.Rep. (CCH) ¶ 97,241, at 96,-717 (S.D.N.Y.1980) [available on WEST-LAW, 1980 WL1364]; *Straus v. Holiday Inns, Inc.,* 460 F.Supp. 729, 734 (S.D.N.Y. 1978); *Richardson v. White,* [1978 Transfer Binder] Fed.Sec.L.Rep. ¶ 96,448, at 93,-611 (S.D.N.Y.1978) [1978 WL 1089]; *cf. In re Union Carbide Corp. Consumer Products Business Securities Litig.,* 676 F.Supp. 458, 469 (S.D.N.Y.1987) (" '[o]rdinarily ... the courts discourage presentations of future earnings, appraised asset valuations and other hypothetical data' ") (quoting *Kohn v. American Metal Climax, Inc.,* 458 F.2d 255, 265 (3d Cir.1972)). In *Gerstle v. Gamble–Skogmo, Inc.,* 478 F.2d 1281 (2d Cir. 1973), the district court had imposed liability under § 14(a) for misleading statements in proxy offers, arising from the defendant's failure to disclose appraised market value of various advertising plants that it owned. The Court of Appeals reversed, holding that the failure to disclose the firm's appraisals of assets in a proxy solicitation did not make the proxy statement materially misleading. The Court reasoned that liability should not be imposed for failure to disclose an asset appraisal where such disclosure was actively discouraged by the SEC.

Plaintiffs argue, however, that the SEC has changed its policy, at least with respect to those appraisals having indicia of reliability. They note that in 1976, the SEC deleted earnings projections from the list of potentially misleading disclosures in proxy statements, SEC Sec.Act.Rel. No. 5699 (April 23, 1976), *reprinted in* [1975–76 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 80,461 (1976), and that in 1978, the SEC adopted a "safe-harbor" rule for forward-

looking statements made in good faith. 17 C.F.R. § 230.175 (1985). While Rule 175 does not require the disclosure of financial projections, *Starkman v. Marathon Oil Co.,* 772 F.2d 231, 240 (6th Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986); *Mendell v. Greenberg,* 612 F.Supp. 1543, 1550 n. 8 (S.D.N.Y.1985), it permits such disclosure where made voluntarily or because otherwise required by law. *Walker v. Action Industries, Inc.,* 802 F.2d 703, 707 (4th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed. 2d 1000 (1987); *Flynn v. Bass Bros. Enterprises, Inc.,* 744 F.2d 978, 987 (3d Cir.1984). In August 1979, the SEC adopted Rule 13e–3, 17 C.F.R. § 240.13e–3, requiring an issuer or its affiliate in a going private transaction to state whether an appraisal has been obtained, how and by whom it was performed, and how it was used. The issuer or its affiliate is further required to make the appraisal and its results available for inspection by the shareholders and investors.[3] In light of these developments, several courts of appeals have stated that an offeror may be required under certain circumstances to disclose an appraisal or other soft information. *See Walker v. Action Industries, Inc,* 802 F.2d 703, 710 (4th Cir.1986) ("We do not hold that there is no duty to disclose financial projections under any circumstances."); *Starkman v. Marathon Oil Co.,* 772 F.2d 231, 241 (6th Cir. 1985) ("a tender offer target must disclose projections and asset appraisals ... only if the predictions underlying the appraisal are substantially certain to hold"), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986); *Flynn v. Bass Bros. Enterprises, Inc.,* 744 F.2d 978, 988 (3d Cir.1984) ("Courts should ascertain the duty to disclose asset valuations and other soft information on a case by case basis, by weighing the potential aid such information will give a shareholder against the potential harm, such as undue reliance, if the information is released with a proper cautionary note."); *Texas Partners v. Conrock Co.,*

---

**3.** Plaintiffs also cite Rule 13e–4, 17 C.F.R. § 240.13e–4, relating specifically to tender offer statements. That regulation, however, unlike

Rule 13e–3, does not require disclosure of appraisals.

685 F.2d 1116, 1121 (9th Cir.1982) (nondisclosure of fact that assets were undervalued states claim under securities laws), *cert. dism.*, 460 U.S. 1029, 103 S.Ct. 1281, 75 L.Ed.2d 501 (1983).[4]

I cannot accept defendant's argument that failure to disclose an appraisal is immaterial as a matter of law. In general, reliable information going to the financial condition of a company must be disclosed especially if the same material or equally valuable material is not otherwise available. *See, e.g., Straus v. Holiday Inns, Inc.*, 460 F.Supp. 729 (S.D.N.Y.1978) (distinguishing between forecast and facts upon which projection might be based); *see also Jones v. National Distillers & Chemical Corp.*, 484 F.Supp. 679, 682–83 (S.D.N.Y. 1979) (issue of fact whether values derived by investment bankers for target's stock is material); *Speed v. Transamerica Corp.*, 99 F.Supp. 808 (D.Del.1951), *modified and affirmed*, 235 F.2d 369 (3d Cir.1956) (cited with approval in *Gerstle v. Gamble–Skogmo, Inc.*, 478 F.2d 1281, 1293 (2d Cir.1973)). In cases subsequent to *Gerstle*, the courts have refrained from stating a per se rule that documents labelled "appraisals" are never material. *See, e.g., Gerrity v. Chapin*, [1979–80 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 97,241, at 96,717 (S.D.N.Y. 1980) ("in cases in which asset valuation has been at issue, the courts have been reluctant to require the inclusion of asset appraisals in the proxy solicitation materials"); *Madonick v. Denison Mines Ltd.*, 63 F.R.D. 657, [1977–78 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 94,550, at 95,909 (S.D. N.Y.1974) (no intent to dispose of assets); *Denison Mines Limited v. Fibreboard Corp.*, 388 F.Supp. 812, 819 (D.Del.1974) ("To conclude from [*Gerstle*] that no asset valuations need be disclosed under any circumstances is to paint with too broad a brush.").

■ Given plaintiffs' contentions as to the misleading presentation of Empire's value, the distortions resulting from the rules of the Superintendent of Insurance forbidding revaluation of surplus notes, the delay in reporting the effects of conversion of notes to common stock until after circulation of the tender materials, the reliable nature of the appraisal in question and the absence of substitute sources for such information, *cf. Rodman v. Grant Foundation*, 608 F.2d 64, 70 (2d Cir.1979), I cannot conclude as a matter of law that there was no duty to disclose the appraisal information and that the complaint should be dismissed.

B. *Standing*

■ Defendants argue that the absence of reliance of the individual named plaintiffs is fatal to plaintiffs' case. The contention is without merit.

Although the amended complaint does not allege that the individual plaintiffs relied upon the misrepresentations, it does allege that "Members of the class relied upon the foregoing misrepresentations and omissions" and that the named plaintiffs have been injured by the false representations to the class members. In analogous circumstances, the Second Circuit has held that individual reliance is not necessary to the maintenance of a suit under § 14(e) where the plaintiff claims that the tender offeror would have been compelled to offer more in the absence of the fraudulent misrepresentations. *See Herbst v. International Telephone & Telegraph Corp.*, 495 F.2d 1308, 1314 (2d Cir.1974); *Chris–Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 373 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 232, 38 L.Ed.2d 148 (1973); *see also Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 946 (2d Cir.1969) (nontendering shareholder has standing under § 14(e)). In *Herbst*, for example, the Court held that individual shareholders could recover damages for the ITT's misrepresentation that its tender offer for the plaintiffs' shares would not constitute a taxable event even though the plaintiffs were not concerned

---

**4.** In *Basic Inc. v. Levinson*, — U.S. —, 108 S.Ct. 978, 984 n. 9, 99 L.Ed.2d 194 (1980), the Supreme Court expressly reserved the question whether "contingent or speculative information, such as earnings forecasts or projections," can be material for the purposes of the federal securities laws.

with and did not rely upon the misrepresentation. It explained:

> Since ITT was offering an equal amount for each share ..., regardless of the individual shareholder's tax status, all shareholders would have benefited equally if ITT has been forced to offer more for the ... shares. In short, even the shareholder who did not care about the tax status of the exchange would have received more for his ... stock if enough shareholders did care and compelled ITT to raise its offer.

*Id.* at 1314.

Similarly, in *Chris–Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir.1973), the Court of Appeals held that a tender offeror, Chris–Craft ("CCI"), could recover damages for injury caused it by misrepresentations made by a competing tender offeror even when it did not rely upon the misrepresentations in purchasing stock of the target company. It stated: "It is important to note that, since the harmful effect of the negligence in this case did not depend upon the exercise of volition by CCI, but instead upon the exercise of volition by other persons, CCI need not show that it relied upon the deception. CCI must show that there was a misrepresentation upon which the target corporation stockholders relied and that this was in fact the cause of CCI's injury." *Id.* at 373;[5] *see also Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787 (2d Cir.1969), *cert. denied*, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970).

Thus at least in the context of section 14 of the Exchange Act,[6] "the reliance of the individual plaintiff is irrelevant where the plaintiff may have been damaged by the reliance of others." *Jones v. National Distillers & Chemical Corp.*, 484 F.Supp. 679, 684 (S.D.N.Y.1979); *accord Plaine v. McCabe*, 797 F.2d 713, 718 (9th Cir.1986); *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 596 (5th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1283–84 (9th Cir.1982); *Markel v. Scovill Mfg. Co.*, 657 F.Supp. 1102, 1107–08 (W.D.N.Y.1987); A. Jacobs, *Litigation and Practice under Rule 10b–5* ¶ 64.01[b][ii], at 3–345–346 (1988).[7] This rule serves to effectuate the Supreme Court's teaching that "in corporate control contests the stage of preliminary injunctive relief, rather than post-contest lawsuits, 'is the time when relief can best be given,' "

---

**5.** Following the Court of Appeals' decision, the action was remanded to the district court for damages. The district court's action was affirmed in part and reversed in part by the Second Circuit. The Supreme Court reversed the Court of Appeals on the grounds that a competing tender offeror lacks standing under § 14(e). *Piper v. Chris–Craft Industries Inc.*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). The Supreme Court's ruling on the issue of standing however did not affect the Second Circuit's prior determination on causation (on which the Court denied the petition for certiorari) and that proposition has been left undisturbed. *Clayton v. Skelly Oil Co.*, [1977–78 Transfer Binder] Fed. Sec.L.Rep. ¶ 96,269, at 92,747 n. 3 (S.D.N.Y. 1977) [1977 WL1067].

**6.** The Court of Appeals' distinction between loss causation and transaction causation, *see Wilson v. Ruffa & Hanover*, 844 F.2d 81, 85–86 (2d Cir.1988); *Bennett v. United States Trust Co.*, 770 F.2d 308, 314 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984), might possibly affect recovery under a Rule 10b–5 theory where the plaintiff alleges that he was not injured by his reliance on the false representation, but by the fact that a false representation made to and relied upon by others forced him to engage in the unprofitable transaction. This may explain those cases in which the district courts have held that Rule 10b–5 requires proof of individual reliance. *See Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482, 1494 (D.Del.1984); *Caleb & Co. v. E.I. DuPont de Nemours & Co.*, 599 F.Supp. 1468 (S.D.N.Y. 1984). The distinction between loss causation and transaction causation, however, has not been made in suits under § 14(e).

**7.** In suits under § 14(a) alleging false representations in a proxy, the plaintiff need not assert that he individually was deceived by the misrepresentation. *See Piper v. Chris–Craft Industries, Inc.*, 430 U.S. 1, 58, 97 S.Ct. 926, 957, 51 L.Ed.2d 124 (1977) (Stevens, J., dissenting); *Pellman v. Cinerama, Inc.*, 89 F.R.D. 386 (S.D.N.Y.1981) ("Plaintiffs do not assert that they were individually deceived by the proxy misrepresentations; rather, they insist that enough other shareholders were deceived to obtain approval of the merger and freeze them out.").

*Piper v. Chris–Craft Industries, Inc.,* 430 U.S. 1, 42, 97 S.Ct. 926, 949, 51 L.Ed.2d 124 (1977) (quoting *Electronic Specialty Co. v. International Controls Corp.,* 409 F.2d 937, 947 (2d Cir.1969) (Friendly, J.)). Because, as defendants note, any person who commences an action before the termination of an offer by definition has knowledge of the falsity of the misrepresentation, under the rule proposed by defendants there would be no person who could bring an action for preliminary injunctive relief. *See Humana, Inc. v. American Medicorp, Inc.,* 445 F.Supp. 613 (S.D.N.Y.1977) (competing tender offeror has standing to bring action for injunctive relief under § 14(e) during duration of tender offer); *see also MacFadden Holdings, Inc. v. JB Acquisition Corp.,* 802 F.2d 62, 66 n. 2 (2d Cir. 1986); *Lewis v. McGraw,* 619 F.2d 192, 195 (2d Cir.1980). It also serves as a recognition that the evil at which § 14(e) is aimed, a " 'misrepresentation upon which the target corporation shareholders relied,' " *Lewis v. McGraw,* 619 F.2d 192, 195 (2d Cir.) (quoting *Chris–Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d 341 (2d Cir.1973)), *cert. denied,* 449 U.S. 951, 101 S.Ct. 354, 66 L.Ed.2d 214 (1980), is not best addressed by withholding standing from those particular target corporation shareholders who may have knowledge that the representation is false.

## CONCLUSION

The motion to dismiss is granted in part and denied in part.

SO ORDERED.