Gordon Y. BILLARD and Edith Citron on behalf of themselves and all others similarly situated, Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPO-RATION and Lehman Brothers Kuhn Loeb, Inc., Defendants.

78 Civ. 4543 (MEL).

United States District Court, S. D. New York.

Nov. 17, 1981.

Kelly, Black, Black, Wright & Earle, P.A., Kenny, Nachwalter & Seymour, P.A., Miami, Fla., Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiffs; Stanley L. Kaufman, Irving Malchman, New York City, of counsel.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendant Rockwell Intern. Corp.; Donald I. Strauber, Edwin D. Scott, Terry A. Thompson, Shana R. Conron, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendant Lehman Bros. Kuhn Loeb Inc.; Edward J. Nowak, New York City, of counsel.

LASKER, District Judge.

This action arises from a tender offer made by defendant Rockwell International Corporation ("Rockwell"), with the assistance of defendant Lehman Brothers Kuhn, Loeb, Inc. ("Kuhn"), its investment banker, for the shares of Collins Radio Company ("Collins") on August 20, 1973.

## I.

Collins, once a prosperous enterprise, had suffered serious economic reversals and, in 1971, was close to bankruptcy. In August of that year, Rockwell invested $35,000,000. in Collins, receiving, in return, a new series of Collins' preferred stock and the right, which it soon exercised, to elect a majority of Collins' board of directors. For a time, Collins' losses continued to mount, but the company's position then improved considerably, as shown in its third quarter report to shareholders, dated May 31, 1973 (Rockwell's brief, Ex. A).

On August 10, 1973, Rockwell announced its decision to make a tender offer for all of the shares of Collins at $25. per share, and if a sufficient number of shares were tendered, to merge the remaining shares into Rockwell, also at $25. per share. On the afternoon preceding the announcement, Collins' stock had closed at $21¼. Rockwell made its formal Offer to Purchase on August 20, 1973. The offer, which remained open for forty days, was successful, and the merger was approved shortly thereafter.

Plaintiffs, Gordon Billard and Edith Citron, were shareholders of Collins. Billard sold his shares on the market during the tender period; Citron tendered her shares to Rockwell. They allege violations of the Securities and Exchange Act of 1934, 15 U.S.C. § 78a et seq., Section 10(b) and Rule 10b–5 thereunder, with regard to the tender offer, Section 14(e) with regard to the proxy statement submitted in connection with the merger, and pendent state law claims for violation of fiduciary duty.

The misconduct alleged by plaintiffs is quite narrow. Plaintiffs allege that, on August 10th, the day on which Rockwell announced its decision to make the tender offer, Rockwell, which controlled Collins' board of directors, possessed inside information, specifically, Collins' favorable fourth quarter report, which had not yet been disclosed, and which, had it been disclosed, would have allegedly caused the price of Collins' shares to rise to approximately $35. per share. It should be noted that plaintiffs make no complaint as to the timeliness or accuracy of Rockwell's disclosures prior to August 1973, or to the disclosures Rockwell made in connection with the tender offer on August 20th. They do assert, however, that Rockwell had a duty to disclose the favorable reports and to wait for the market to "react" to the disclosure *before* announcing the tender offer. Plaintiffs theorize that the announcement of the tender offer and intended merger "capped" the market price for shares at $25., because no one would offer more than $25. per share knowing that, if the tender offer were successful, Rockwell would have the right to purchase that share at a later date for $25. upon the merger. Plaintiffs contend that Rockwell withheld the disclosure of its favorable information until after the announcement of the tender offer, on the advice of Kuhn that such timing would "artificially depress[ ] the price of Collins stock." (Amended Complaint, ¶ 18).

The Court ruled on an earlier motion to dismiss the original complaint, 85 F.R.D. 662. As a result of that ruling, plaintiffs moved to amend their complaint. Rockwell opposes granting leave to amend the complaint and, in the alternative, moves to dismiss the complaint, if amended, for failure to state a claim on which relief may be granted pursuant to Fed.R.Civ.Pr. 12(b)(6).

Plaintiffs' proposed amended complaint alleges in essence three violations of the federal securities laws: (1) that Rockwell failed to fulfill its duty, under § 10(b), to disclose its favorable information concerning Collins *prior to* its announcement of the tender offer to allow the stock "to find its fair and unmanipulated price level" (*Id.*, ¶ 16); (2) that Rockwell, having "frozen . . . the price of Collins . . . stock" failed to disclose or "deceptively concealed" the fact

of the "freezing" both in the tender offer (in violation of § 10(b)) and in the proxy statement for the merger (in violation of § 14(e)) (*Id.*, ¶¶ 22, 27); and (3) that Rockwell's timing of the tender offer constituted a "manipulation" in violation of § 10(b) and § 14(e) (*Id.*, ¶¶ 18, 28) of the price of Collins stock. (*Id.*, ¶ 18).[1]

## II.

■ The issue raised by plaintiffs' proposed complaint appears to be one of first instance. The fact that plaintiffs have cited no decision on the point suggests the unusual nature of the position which they take. The question posed is this: Does an insider have a duty not only to disclose material inside information but also to await the market's reaction to the information before announcing its intention to buy or sell stock?

The only relevant authority which our research has discovered is Professor Bromberg's suggestion, taken from *Securities and Exchange Comm'n v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968), *cert. denied* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), that in certain circumstances, an insider should wait for a short period after a press release is made before trading in order to give the market time to "absorb" the information released. In *Texas Gulf*, one defendant who traded a few minutes after the press release, but before the appearance of the news on the Dow Jones tape, was held liable for trading on inside information. Bromberg advises that "[f]or the cautious insider, waiting for the morning newspaper to carry the information is almost certainly safe . . . [and] waiting for fifteen minutes after the tape runs is probably sufficient." 2 A. Bromberg and L. Lowenfels, *Securities Fraud & Commodities Fraud* § 7.4(7)(b), p. 190.3. Applying Bromberg's rule to the facts of this case, Rockwell would have fulfilled its duty of disclosure by waiting, for example, for fifteen minutes before accepting any tendered shares, thereby presumably allowing the market to absorb the good news disclosed simultaneously with the Offer to Purchase. Under this test Rockwell would certainly not be "jumping the gun" since its tender offer remained open for forty days.

Putting aside such a mechanistic approach, however, the imposition of such a duty as plaintiffs propose would go far beyond the accepted understanding of the federal requirements as to timeliness and completeness of disclosure. The rule has historically been that the insider must make the necessary disclosure concurrently with or at any time prior to the time of the act (or omission) which is the subject of the litigation. Plaintiffs' position, by contrast, would require the insider to estimate how long it would take the market to "react to" the information to be disclosed and what its impact would be. The disclosure would then have to precede even the announcement of the proposed transaction by the estimated period of market reaction time. It is not necessary to elaborate the burdens that such a rule would impose on insiders and on courts later evaluating whether the insiders' approximations were sufficiently accurate.

Moreover, it would be irresponsible not to consider the impact of imposing lengthy delays on commercial trading, particularly in the context of tender offers, with regard to which time is nearly always of the essence. As Rockwell convincingly argues, if an insider is required to disclose all of its inside information *prior to announcing* an offer, it may have to delay the offer indefinitely, as new events occur and their impact on the market is awaited. Such a rule could effectively preclude insiders from trading in the securities of their companies.

The discussion above does not reflect an insensitivity to plaintiffs' concerns. To be sure, investors in plaintiffs' position might be prejudiced if insiders planned to time the announcement of a tender offer in such a way as to overshadow the financial disclo-

1. Kuhn is alleged to have advised, acted in concert with, or aided and abetted all of the above. Thus, analysis as to the liability of Rockwell applies equally to that of Kuhn. Further references to Rockwell include Kuhn in its capacity as Rockwell's advisor.

sures required to accompany the offer. However, as the Supreme Court stated with regard to § 10(b) in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737, 95 S.Ct. 1917, 1926, 44 L.Ed.2d 539 (1975), "It is . . . proper that we consider . . . what may be described as policy considerations when we come to flesh out portions of the [securities act] . . ." The policy considerations in this case appear strongly to favor Rockwell's position. In any event, such a drastic change from established disclosure requirements as plaintiffs propose would appear to amend the statute, and to call for legislative, not judicial action.

### III.

■ For a number of reasons plaintiffs' allegations of deception also fail to state a cause of action. First, Rockwell had no legal duty enforceable under the federal securities laws to state that the price it offered was unfair. Under *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the mere unfairness of a price offered by an insider is not a violation of the federal securities laws. It follows that a failure to "disclose" that an offered price is unfair is not a violation. *See Goldberger v. Baker*, 442 F.Supp. 659, 664 (S.D.N.Y.1977). Neither "§ 10(b) [n]or Rule 10b–5 requires insiders to characterize . . . transactions with perjorative nouns or adjectives." *Goldberg v. Meridor*, 567 F.2d 209, 218 n. 8 (2d Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978).

Second, the securities laws do not require traders to disclose the consequences of their actions. If consequences are inevitable, then everyone may be presumed to contemplate them, and there is no need to announce them. On the other hand, if the consequences of Rockwell's actions were, like most future events, matters of prediction or speculation, then Rockwell surely had no obligation to disclose its predictions—in fact, had Rockwell done so, it could have faced potential liability for having made a misleading disclosure. Just as "[i]t would be as serious an infringement

. . . to overstate the definiteness of . . . plans as to understate them," *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 948 (2d Cir. 1969), so any disclosure by Rockwell of its predictions might have been as likely to mislead investors as was its failure to disclose such predictions.

Moreover, in complaining of Rockwell's failure to disclose its predictions as to the impact of its announcement on the market, plaintiffs are again asking for a dramatic change in the federal disclosure requirements. "Although the SEC now *permits* disclosure of [certain] projections . . . no company is *required* by the SEC to issue projections . . . . Nor has any court ever imposed liability for failure to include projections in a registration statement." *Straus v. Holiday Inns, Inc.*, 460 F.Supp. 729 (S.D.N.Y.1978) (citations omitted) (emphasis in original). Nor does there appear to be any case in which a court has imposed liability for failure to disclose projections in other contexts. "Ordinarily . . . the courts discourage presentations of future earnings, appraised asset valuations and other hypothetical data in proxy materials." *Kohn v. American Metal Climax, Inc.*, 458 F.2d 255, 265 (3d Cir. 1972), *cert. denied*, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972). "Full factual disclosure need not be embellished with speculative financial predictions." *Rodman v. Grant Foundation*, 608 F.2d 64, 72 (2d Cir. 1979). The securities laws require only "the disclosure of basic facts so that [others] may draw upon their own evaluative expertise." *SEC v. Texas Gulf Sulphur*, 401 F.2d 833, 849 (2d Cir. 1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

### IV.

■ Plaintiffs' allegations of "manipulation" also fail to state a claim. As explained in *Santa Fe*, " 'Manipulation' is 'virtually a term of art when used in connection with securities markets' . . . . The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead inves-

tors by artificially affecting market activity." 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977), *citing Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199, 96 S.Ct. 1375, 1383, 47 L.Ed.2d 668 (1976). This term of art cannot be extended to cover every form of unfair dealing which appears to the layperson to be manipulative. The unifying element in the manipulative devices listed in *Santa Fe* is that they are "used to persuade the public that activity in a security is the reflection of genuine demand instead of a mirage." *SEC v. Resch-Cassin & Co.*, 362 F.Supp. 964, 975 (S.D.N.Y. 1973). The acts complained of here clearly fall outside that limited definition.

\* \* \*

For the reasons stated above, Rockwell's motion to dismiss the amended complaint for failure to state a claim is granted. This disposition makes unnecessary consideration of the other motions pending in this case. Accordingly, plaintiffs' motion for class certification, defendants' motion for summary judgment against Billard and Kuhn's motion to dismiss for failure to comply with Fed.R.Civ.Pr. 9(b) and 11 are denied as moot.[2] Plaintiffs offer no reason why the pendant state claims, which would apparently raise questions of Iowa law, should be decided in this forum, and the pendant claims are consequently dismissed.

The complaint is dismissed.

It is so ordered.

---

2. No liability can attach to Kuhn's aiding, abetting, or advising actions that are not illegal in themselves.