**Ira L. MENDELL, on behalf of himself and others similarly situated, Plaintiff,**

v.

**George E. GREENBERG, Frederick R. Adler, James R. Swartz, Anita Loehmann Stafford, Donald H. Balleisen, Allan S. Gordon, Christopher D. Illick, Cecily C. Selby, Kenneth J. Thornhill, John D. Mack, AEA Investors Inc., LHI Inc., LH Investors Inc., LH Holdings Inc., Loehmann's Inc., and Drexel Burnham Lambert Incorporated, Defendants.**

No. 81 Civ. 3483 (JES).

United States District Court,
S.D. New York.

July 11, 1985.

Kaufman Malchman & Kirby, P.C., New York City, for plaintiff; Stanley L. Kaufman, Irving Malchman, New York City, of counsel.

Kelley Drye & Warren, New York City, for defendants AEA Investors Inc., LH Investors Inc. and Loehmann's, Inc.; Robert Ehrenbard, Arnold S. Klein, New York City, of counsel.

Cahill Gordon & Reindel, New York City, for defendant Drexel Burnham Lambert, Inc.; Michael P. Tierney, Charles A. Gilman, David S. Smith, New York City, of counsel.

Reavis & McGrath, New York City, for defendants George J. Greenberg, Frederick R. Adler, James R. Swartz, Allan S. Gordon, Christopher D. Illick and Cecily C. Selby; David C. Birdollf, Judith B. Yaeger, New York City, of counsel.

Sage Gray Todd & Sims, New York City, for defendants Anita Loehmann Stafford and John D. Mack; Robert W. Brundige, Jr., Stuart A. Krause, New York City, of counsel.

## OPINION & ORDER

SPRIZZO, District Judge.

Plaintiff Ira L. Mendell owned common stock of defendant Loehmann's Inc. ("Loehmann's") in 1981 when Loehmann's merged with a company organized and controlled by defendant AEA Investors Inc. ("AEA").[1] Pursuant to the merger, Loehmann's common stockholders received $31.30 in cash for each share of common stock. Plaintiff alleges in his Amended and Supplemental Complaint ("Complaint") that shareholder approval of the merger was obtained in violation of section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), Rule 14a–9, 17 C.F.R. § 240.14a–9, and common law.

Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). The parties submitted, and the Court has considered, matters outside the pleadings, and after oral argument the Court gave plaintiff an opportunity to submit any further information he had to support the allegations of his complaint. Therefore, the motion is treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

Section 14(a) proscribes, *inter alia*, solicitation of proxies in contravention of the rules and regulations promulgated by the Securities and Exchange Commission. Rule 14a–9 provides, *inter alia:*

> (a) No solicitation subject to this regulation shall be made by means of any proxy statement ... containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading....

17 C.F.R. § 240.14a–9(a). Plaintiff alleges that a proxy statement dated December 9, 1980 (the "proxy statement") and issued

---

1. In addition to Loehmann's and AEA, defendants are George J. Greenberg, president, chief executive officer and director of Loehmann's; Frederick R. Adler, secretary and director of the company; James R. Swartz, Anita Loehmann Stafford, Allan S. Gordon, Christopher D. Illick, Cecily C. Selby, and John D. Mack, directors of Loehmann's; LHI, Inc. and LH Holdings Inc., both formed and controlled by AEA for the purposes of effectuating the merger; LH Investors Inc., sole owner of LH Holdings Inc.; and Drexel Burnham Lambert, Inc. ("Drexel"), an investment bank.

Donald H. Balleisen and Kenneth J. Thornhill, named as defendants in the complaint, were never served and therefore are not parties to the action.

with respect to the merger was false and misleading due to the omission of material facts which, if disclosed, would have indicated that Loehmann's common stock was worth more than $31.30 per share.

■ Liability for nondisclosure under section 14(a) and Rule 14a–9 requires (1) omission of a material fact necessary in order to make the proxy statement not false or misleading; (2) omission as the result of knowing, reckless or negligent conduct; and (3) that the proxy solicitation was an essential link in effecting the proposed corporate action. *See, e.g., Halpern v. Armstrong*, 491 F.Supp. 365, 378 (S.D.N.Y.1980); *Berkman v. Rust Craft Greeting Cards, Inc.*, 454 F.Supp. 787, 791 (S.D.N.Y. 1978).[2]

■ As a preliminary matter, the parties agree, and the Court will assume for purposes of this motion, that negligent conduct may be the predicate for liability. *See, e.g., Gruss v. Curtis Publishing Co.*, 534 F.2d 1396, 1403 (2d Cir.), *cert. denied*, 429 U.S. 887, 97 S.Ct. 240, 50 L.Ed.2d 168 (1976); *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1300–01 (2d Cir.1973); *Management Assistance Inc. v. Edelman*, 584 F.Supp. 1021, 1028 (S.D.N.Y.1984); *Richland v. Crandall*, 262 F.Supp. 538, 553 n. 12 (S.D.N.Y.1967).[3] The parties disagree, however, as to whether the defendants were required to disclose the omitted facts in order to make the proxy statement not false or misleading, and whether those facts were material.

■ The purpose of section 14(a) is to provide full and fair disclosure from which shareholders may draw their own inferences and make their decisions on how to vote. *See, e.g., Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 381, 90 S.Ct. 616, 620, 24 L.Ed.2d 593 (1970); *J.I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964); *cf. TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 448, 96 S.Ct. 2126, 2131, 48 L.Ed.2d 757 (1976). Therefore, proxy materials need not be perfect, but must simply convey a "sufficiently accurate picture so as not to mislead." *See Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195, 1200 (2d Cir. 1978) (citing *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 800 (2d Cir. 1969), *cert. denied*, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970)); *see also Management Assistance, supra*, 584 F.Supp. at 1027.

■ An omitted fact is material when there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote, *see, e.g., TSC Industries, supra*, 426 U.S. at 449, 96 S.Ct. at 2132, which requires a showing of "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder ... [or] that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* (footnote omitted). Materiality is a mixed question of law and fact as to which summary judgment may be granted only where reasonable minds could not differ on

---

**2.** Defendants do not dispute that the particular statements or facts plaintiff claims should have been disclosed in the proxy statement were not, in fact, included. There is, therefore, no issue of fact as to whether or not these things were omitted. They also do not contest that the proxy statement was an essential link in effecting the merger.

**3.** Drexel argues that scienter *is* required to establish its liability under section 14(a) because it acted as an independent professional advisor, citing, *inter alia, Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422, 428 (6th Cir.), *cert. denied*, 449 U.S. 1067, 101 S.Ct. 795, 66 L.Ed.2d 611 (1980). The Court need not resolve that issue, however, as it dismisses the claims against Drexel on other grounds.

Defendants also moved to dismiss pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with the requisite particularity. Counsel for plaintiff stated, both in his motion papers and in open court, that the complaint does not allege fraud, intentional misrepresentation, or violation of section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), but only negligence, and that for this reason Rule 9(b) does not apply. Therefore, defendants' Rule 9(b) motion is denied. Any allegations in the complaint sounding in fraud or intentional conduct shall be treated as surplusage.

the issue. *Id.* at 450, 96 S.Ct. at 2132; *see also GAF Corp. v. Heyman*, 724 F.2d 727, 737 (2d Cir.1983); *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 951, 952 (2d Cir.1978).

Most of the allegations of the complaint are legally insufficient because they concern information which defendants were not legally required to disclose. With respect to a few claims, however, the Court cannot say as a matter of law either that the facts alleged were not required to be disclosed or that the omissions were not material.

### 1. *Loehmann's store leases*

 Plaintiff claims that store leases held by Loehmann's, which were listed on the company's balance sheets as liabilities in the aggregate amount of rent due, were actually valuable assets worth millions of dollars, and that since the "value" of these leases was not reflected in book value, defendants' failure to list them as assets or to note that they were undervalued was a misleading and material omission.

Plaintiff's argument that the proxy statement failed to disclose adequate information with respect to the value of the leases is incorrect. The proxy statement described the leases and disclosed all of the information which plaintiff claims made them valuable.[4] Shareholders could decide from those facts whether or not the offered price adequately reflected the "value" of the leases, especially since Loehmann's stock was traded on a reliable national market and the value of the company's assets was adequately reflected in the market value. *See, e.g., In re New York, New Haven and Hartford Railroad Co. v. Smith*, 632 F.2d 955, 962–63 (2d Cir.), *cert. denied*, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980); *Seaboard World Airlines, Inc. v. Tiger International, Inc.*, 600 F.2d 355, 361–62 (2d Cir.1979); *Pavlidis v. New England Patriots Football Club, Inc.*, 737 F.2d 1227, 1234 (1st Cir.1984); *South Coast Services Corp. v. Santa Ana Valley Irrigation Co.*, 669 F.2d 1265, 1271 (9th Cir.1982); *Gerrity v. Chapin*, [1979–80 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,241, at 96,717 (S.D.N.Y. Jan. 9, 1980); *Jones v. National Distillers & Chemical Corp.*, 484 F.Supp. 679, 683 (S.D.N.Y.1979); *see also Gerstle, supra*, 478 F.2d 1281.[5]

Plaintiff also has cited no authority for his argument that some type of assessment of the commercial value of the leases or a general statement that the leases were undervalued was required. The fact that defendants may have told AEA that Loehmann's held "valuable" leases does not create a legal obligation to make the same statement to shareholders. *See, e.g., Flynn v. Bass Brothers Enterprises, Inc.*, 744 F.2d 978, 986 n. 12 (3d Cir.1984); *South Coast Services, supra*, 669 F.2d at 1272 n. 4; *In re Brown Company Securities Litigation*, 355 F.Supp. 574, 584 (S.D.N.Y.1973); *cf. Kohn v. American Metal Climax, Inc.*, 458 F.2d 255, 265 (3d Cir.), *cert. denied*, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972).[6] It follows that since

---

**4.** This included the number of leases, a general description of the sizes and types of locations of the rented properties, past annual total rent on the stores, aggregate minimum future rental commitments, the fact that the leases had varying expiration dates up to 2000, and that renewal options for five to twenty-five years were available on almost all the leases. *See, e.g.,* Proxy Statement, Exhibit C to Affidavit of Robert Ehrenbard (June 17, 1983) ("Proxy Statement") at 18 n. 1, 20, 25, 26, 44.

**5.** Plaintiff does not set forth any particular method of valuing the leases that he claims should have been disclosed. As defendants correctly note, where there is a reliable market value courts have not required disclosure of any valuation of assets. This includes liquidation value, which is only relevant where a transac-

tion is for liquidation purposes. *See, e.g., In re New York*, 632 F.2d at 962–63; *Seaboard, supra*, 600 F.2d at 361–62; *Pavlidis, supra*, 737 F.2d at 1234; *South Coast Services, supra*, 669 F.2d at 1271; *Gerrity, supra*, [1979–80 Transfer Binder], at 96,717. This is clearly not the case here. Moreover, while the SEC has authorized voluntary disclosure of asset appraisals made in good faith and on a reasonable basis in proxy contests where liquidation or other disposition of assets is an issue, *see* SEC Release No. 34–16833 (May 23, 1980), *reprinted in* Fed.Sec.L.Rep. (CCH) ¶ 24,117, there is no rule *requiring* the making or inclusion of appraisals.

**6.** Plaintiff also notes that the SEC's Comments regarding the preliminary proxy materials provided that "any material deviation from book value known by management should be dis-

the investors were not misled as to the general nature and terms of the leases, no further disclosure or opinion as to their value was necessary.

### 2. *Loehmann's future prospects and financial projections*

Plaintiff's claim that it was a material and misleading omission to fail to disclose certain information regarding Loehmann's projected sales figures and its position in the retail industry,[7] is likewise legally insufficient.

■ Neither the SEC nor the Second Circuit have required that financial projections be included in proxy materials. *See, e.g., Gerstle, supra,* 478 F.2d at 1292; *Flum Partners v. Child World Inc.,* 557 F.Supp. 492, 499 (S.D.N.Y.1983); *Lewis v. Oppenheimer & Co.,* 481 F.Supp. 1199, 1208 (S.D.N.Y.1979); *cf. Rodman v. Grant Foundation,* 608 F.2d 64, 72 (2d Cir.1979); *Billard v. Rockwell International Corp.,* 526 F.Supp. 218, 221 (S.D.N.Y.1981), *aff'd,* 683 F.2d 51 (2d Cir.1982); *Straus v. Holiday Inns, Inc.,* 460 F.Supp. 729, 734 (S.D.N.Y. 1978).[8] Moreover, plaintiff must do more than simply state generally that SEC requirements establish a minimum standard for disclosure which is not necessarily exhaustive in every case, without indicating why future prospects or projections had to be contained in order to render this particular proxy statement not misleading. Similarly, as noted above with respect to the leases, it is also insufficient to merely allege that projections were given to AEA in connection with merger negotiations. *Cf. Flynn, supra,* 744 F.2d at 986 n. 12; *South Coast Services, supra,* 669 F.2d at 1272 n. 4; *Kohn, supra,* 458 F.2d at 265; *In re Brown, supra,* 355 F.Supp. at 584.

■ The Court also rejects plaintiff's claim that defendants were required to point out, in addition to all the information contained in the proxy statement, that Loehmann's was in an "attractive" or "rapid growth segment" of the industry. It is well settled that a proxy statement need not characterize disclosed information. *See, e.g., Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.,* 476 F.2d 687, 697 (2d Cir.1973) (quoting *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 848–49 (2d Cir.1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969) ); *Koppel v. Wien,* 575 F.Supp. 960, 968 (S.D.N.Y.1983), *rev'd on other grounds,* 743 F.2d 129 (2d Cir.1984); *cf. Goldberg v. Meridor,* 567 F.2d 209, 218 n. 8

---

closed." *See* Affidavit of Stanley L. Kaufman, Exhibit E, at 2 (Feb. 1, 1984). Those same Comments, however, stated that the proxy statement should simply "indicate whether or not any fixed asset appraisals have been recently made." *Id.* at 1. The proxy statement disclosed that no recent appraisal of assets existed, *see* Proxy Statement at 2, 9, in compliance with the SEC Comments. *Cf. General Time Corp. v. Talley Industries, Inc.,* 403 F.2d 159, 163 (2d Cir. 1968), *cert. denied,* 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969).

**7.** Plaintiff contends that the proxy statement should have revealed that:
(a) Loehmann's was in an attractive and rapid growth segment of retailing.
(b) Loehmann's with sales of $160,000,000 "could well achieve a sales level of $450,000,-000 in the next five years" (1980 through 1985).
(c) Loehmann's would reach sales of $253,-000,000 [sic] by 1983. (Loehmann's actually reached sales of $260,000,000 for the fiscal year ended January 24, 1983.)
(d) Off-price retailers such as Loehmann's are in "one of the best growth segments of the retailing industry" (supported by sales growth figures), and "Loehmann's is one of the best established companies in this industry".
(e) Five comparable retail chains had been sold for substantial premiums over the stock market price of their shares, whereas the public was being merged out of Loehamnns [sic] at approximately the stock market price of its shares.
Complaint at ¶ 44.

**8.** While the SEC has formulated safe harbor rules for certain voluntarily disclosed and well-founded projections, *see, e.g.,* 17 C.F.R. § 230.-175; 17 C.F.R. § 240.3b–6, these do not *require* that projections be included in proxy materials. Cases cited by plaintiff requiring disclosure where tippees traded on unrevealed inside information regarding a company's future prospects or where defendants were charged with deception and self-dealing are inapposite, as no such facts have been alleged in the complaint or argued on this motion. Plaintiff has cited no authority for the proposition that, absent such circumstances, projections must be disclosed.

(2d Cir.1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978). Nor does the law require inclusion of statements which are implicit or self-evident, *see, e.g., Management Assistance, supra,* 584 F.Supp. at 1027; *Klamberg v. Roth,* 473 F.Supp. 544, 551 (S.D.N.Y.1979), or information as to which shareholders have access equal to that of defendants, or of which shareholders should already be aware. *See, e.g., Rodman, supra,* 608 F.2d at 70; *Seibert, supra,* 586 F.2d at 952; *Klamberg, supra,* 473 F.Supp. at 552.

▪ Finally, it is clear that in order to not be misleading the proxy materials were not required to state that five unrelated retailers had been sold for premiums over the market price in unrelated transactions. *See, e.g., Flum Partners, supra,* 557 F.Supp. at 498–99; *cf. Koppel, supra,* 575 F.Supp. at 968–69. The fact that other transactions might have been negotiated on terms plaintiff may have found more favorable is irrelevant. *See, e.g., Koppel, supra,* 575 F.Supp. at 968–69; *cf. South Coast Services, supra,* 669 F.2d at 1273–74; *Halpern, supra,* 491 F.Supp. at 380.[9]

### 3. *Fees paid to AEA*

▪ The proxy statement disclosed that after the merger it was anticipated that Loehmann's would engage AEA to provide management services for an annual fee of $300,000. *See* Proxy Statement at 11. Plaintiff alleges that this statement was misleading because it omitted the material fact that these fees were in an amount never before expended and were for "unnecessary services" which Loehmann's had never used in the past. *See* Complaint at ¶ 64.

As noted above, the law does not require that defendants characterize or state conclusions about disclosed facts. *See, e.g., Gulf & Western, supra,* 476 F.2d at 697; *Koppel, supra,* 575 F.Supp. at 968; *Stein v. Aldrich,* [1981–82 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 98,473, at 92,778–79 (S.D.N.Y. July 18, 1980); *cf. Goldberg, su-*

*pra,* 567 F.2d at 218 n. 8; *Billard, supra,* 526 F.Supp. at 221. Nor were defendants required to compare the proposal to past Loehmann's practices. *See, e.g., Rodman, supra,* 608 F.2d at 72; *cf. Goldberger v. Baker,* 442 F.Supp. 659, 664–65 (S.D.N.Y. 1977).

▪ Plaintiff also alleges that it was a misleading omission not to state that AEA would obtain a substantial interest in Loehmann's for little or no consideration, and that this fact, combined with the management fees, a finder's fee to be paid to AEA, and fees paid to Drexel, "substantially reduced" the price paid to shareholders. *See* Complaint at ¶¶ 65–66. The underlying facts of the transaction including consideration, AEA's interests, and all the anticipated fees, were fully disclosed. Each shareholder could come to his own conclusions regarding fairness and the effect on price. The securities laws require no more. *See, e.g., Gulf & Western, supra,* 476 F.2d at 697; *Management Assistance, supra,* 584 F.Supp. at 1027; *Koppel, supra,* 575 F.Supp. at 968; *Klamberg, supra,* 473 F.Supp. at 551–52; *Nemo v. Allen,* 466 F.Supp. 192, 195 (S.D.N.Y.1979).

### 4. *Claims against Drexel*

Plaintiff contends that (1) Drexel violated section 14(a) by permitting the use of its name to solicit proxies, and (2) Drexel's opinion with respect to the fairness of the merger price from a financial point of view was materially false and misleading.

▪ Plaintiff does *not* claim that Drexel actually solicited any proxies, but only that it permitted the use of its name to solicit proxies. To establish liability where there is no active participation in the solicitation effort, there must be a substantial connection between the use of Drexel's name and the solicitation effort. *See, e.g., SEC v. Falstaff Brewing Corp.,* 629 F.2d 62, 68 (D.C.Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 569, 66 L.Ed.2d 471 (1980);

---

**9.** Plaintiff has filed excerpts from proxy statements issued by other companies in totally unrelated transactions, where projections were made and the value of assets was discussed. These documents are clearly irrelevant to the action before the Court. *See, e.g., Lewis, supra,* 481 F.Supp. at 1205.

*Yamamoto v. Omiya,* 564 F.2d 1319, 1323 (9th Cir.1977); *Lewis v. Byrnes,* 538 F.Supp. 1221, 1224 (S.D.N.Y.1982). The cases cited by plaintiff finding liability with respect to those who did not actively solicit but who permitted use of their name to solicit proxies all involved a party to the transaction who would directly benefit by the shareholders' favorable vote, for example by taking control of the corporation or becoming a director. *See, e.g., Falstaff, supra,* 629 F.2d at 69; *Lewis, supra,* 538 F.Supp. at 1224. This is not the case with respect to Drexel.

■■■■ Moreover, the fact that Drexel may have participated in drafting the proxy statement, as plaintiff alleges, is insufficient to constitute a solicitation. *See, e.g., Browning Debenture Holders' Committee v. Dasa Corp.,* 72 Civ. 1332, slip op. at 4 (S.D.N.Y. April 18, 1975), *aff'd,* 560 F.2d 1078 (2d Cir.1977); *Gould v. American Hawaiian Steamship Co.,* 351 F.Supp. 853, 865 (D.Del.1972). Therefore, the Court sees no basis for finding Drexel liable under section 14(a) for permitting use of its name to solicit proxies. Since plaintiff does not allege that Drexel directly solicited any proxies or was a party to such solicitations, any claim of liability as a principal against Drexel is legally insufficient. *See, e.g., Iroquois Industries, Inc. v. Syracuse China Corp.,* 417 F.2d 963, 970 (2d Cir.1969), *cert. denied,* 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970); *Robbins v. Banner Industries, Inc.,* 285 F.Supp. 758, 761–62 (S.D.N.Y.1966); *Osofsky v.*

*Zipf,* 78 Civ. 0071 (JMC), slip op. at 10 (S.D.N.Y. May 24, 1983).

■■■■ Drexel also cannot be sued as an aider and abettor, because plaintiff has failed to allege the requisite scienter. *See, e.g., Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 922, 925–27 (2d Cir.1980); *Gould v. American-Hawaiian Steamship Co.,* 535 F.2d 761, 779–80 (3d Cir.1976). In fact, plaintiff has expressly stated that he does not charge Drexel with fraudulent or intentional misconduct. *See, e.g.,* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended and Supplemental Complaint at 33–34; *cf.* Mendell Deposition at 325–31.[10]

■■■■ Finally, plaintiff contends that Drexel's fairness opinion was false and misleading because, since Drexel knew all the information allegedly omitted from the proxy statement, it also knew the merger price was inadequate. The Court has already determined that Drexel can not be liable pursuant to section 14(a). Plaintiff has not sued under any other provision, such as section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), or Rule 10b–5, 17 C.F.R. § 240.10b–5. Indeed, as noted above, plaintiff has expressly stated that he does not charge Drexel with fraud or intentional misconduct, and therefore a claim pursuant to section 10(b) could not stand. *See, e.g., Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Billard v. Rockwell International Corp.,* 683 F.2d 51, 56–57 (2d Cir.1982). It follows, therefore, that Drexel is entitled to dismissal of all claims against it.[11]

---

10. Plaintiff also alleges that Drexel was in an undisclosed conflict of interest because it purported to represent the best interests of the Loehmann family, AEA, and the Loehmann's shareholders. However, each fact which plaintiff argues as proof of the conflict of interest was included in the proxy materials.

Furthermore, the facts regarding Drexel were not obscured, buried, scattered, or found under inappropriate headings, as plaintiff contends, but were stated clearly, with the most extensive discussion being under headings of "Background of the Merger" and "Investment Bankers' Opinion." *See* Proxy Statement at 8, 10. While plaintiff argues that the information about Drexel could have been more simply stated, defendants were not required to present

facts in any particular way, as long as the proxy materials were not misleading. *See, e.g., Kennecott Copper Corp., supra,* 584 F.2d at 1200; *Richland, supra,* 262 F.Supp. at 553–54. As there was full and fair disclosure of Drexel's involvement and interests, it follows that any claim based upon the failure to disclose Drexel's alleged conflict of interest cannot stand. *See also Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1084 (2d Cir.1977); *Dofflemyer v. W.F. Hall Printing Co.,* 558 F.Supp. 372, 385 (D.Del.1983); *Rodman v. Grant Foundation,* 460 F.Supp. 1028, 1038 (S.D.N.Y.1978), affirmed, 608 F.2d 64 (2d Cir.1979).

11. Because the Court is dismissing all federal claims as to Drexel, it declines to exercise pendent jurisdiction over the common law claims

### 5. *Motivation of Loehmann family shareholders*

Plaintiff alleges that at the time of the merger the Loehmann family shareholders had to make a prompt sale of their Loehmann's stock, with price being relatively unimportant, because, *inter alia,* they urgently needed to raise money to pay estate taxes. *See* Complaint at ¶¶ 46, 47, 49.[12] Plaintiff contends that this placed the Loehmann family in conflict with the interests of other shareholders, and that the failure to disclose these personal motivations was a misleading and material omission.

■ A proxy statement need not set forth subjective motivations underlying the vote of a director or controlling shareholder as long as all the material facts regarding their personal interests are disclosed. *See, e.g., Rodman, supra,* 608 F.2d at 71; *Crane Co. v. Westinghouse Air Brake Co.,* 419 F.2d 787, 803 (2d Cir.1969), *cert. denied,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970); *Koppel, supra,* 575 F.Supp. at 967; *Gluck v. Agemian,* 495 F.Supp. 1209, 1214–15 (S.D.N.Y.1980); *Lewis, supra,* 481 F.Supp. at 1204; *cf. Data Probe Acquisition Corp. v. Datatab, Inc.,* 722 F.2d 1, 5 (2d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984); *SEC v. Parklane Hosiery Co.,* 558 F.2d 1083, 1086 (2d Cir.1977).

■ It seems clear from the information contained in the proxy statement that the Loehmann family had their own interests and reasons for voting in favor of the merger. The proxy statement disclosed, *inter alia,* that their decision to sell coincided with the deaths of Charles Loehmann, company founder, and his wife, and explained how the family's efforts to find an opportunity to dispose of their stock led to the merger proposal. However, the Court cannot say as a matter of law that disclosure of the particular facts regarding estate tax liability was not necessary in order to make the proxy statement not misleading, or that there is no genuine issue as to whether those facts would have been material to a reasonable shareholder. *Cf. SEC v. Parklane Hosiery, supra,* 558 F.2d 1083. While a jury may well determine this information would not have significantly altered the total mix of information available, the issue must be left to a jury to decide.[13]

---

against Drexel. *See, e.g., United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *McLearn v. Cowen & Co.,* 660 F.2d 845, 848 (2d Cir.1981).

12. At his deposition, plaintiff stated that he had no personal knowledge of the Loehmann family's tax situation or other alleged motivations, but based his allegations on "businessman's logic" or "inference." *See, e.g.,* Mendell Deposition at 158–73, 195–97, 269–70, 277–78. Counsel for plaintiff stated at oral argument that at the time the complaint and amended complaint were filed he only assumed based on "common sense inference" that the Loehmann family had estate tax problems. After oral argument on this motion, plaintiff submitted state and federal tax documents regarding the estates of Charles and Anita Loehmann, which were obtained by plaintiff's counsel after the filing of the amended complaint, and which indicate an aggregate estate tax liability of more than $9 million.

Defendants have moved for sanctions pursuant to Fed.R.Civ.P. 11, claiming that plaintiff had no factual basis for the allegations in his complaint at the time it was filed, but rather sued on the basis of pure speculation. While defendants' argument that the allegations were not properly substantiated when made has some merit, this is not the appropriate time to rule on that issue.

Rule 11 is designed to deter attorneys from making nonmeritorious claims which cost their opponents time and money to resist. Even assuming a violation exists here, however, the Court is not convinced that the purposes of the Rule would be well served by affording defendants the benefits of Rule 11 where the facts alleged, although unsubstantiated when first made, turn out to be true. Therefore, the Court will await a determination as to the truth or falsity of these allegations before deciding on defendants' Rule 11 application.

13. Plaintiff also alleges that defendant Stafford would pay no or little capital gains tax on the sale of her stock due to her tax situation, *see* Complaint at ¶ 48, and that the family had a strong interest in assuring the continuation of the business under the Loehmann name. *See id.* at ¶ 51.

The proxy statement herein did note that the merger would be a taxable transaction, and advised each shareholder to consider the tax consequences given his particular situation. *See* Proxy Statement at 4–5, 15–16. However, the law does not require proxy materials to state that sale of stock pursuant to a merger will have differing tax consequences for each shareholder. *See, e.g., Lewis v. Oppenheimer, supra,* 481

6. *AEA's alleged agreements with Greenberg and Adler*

Plaintiff alleges that the proxy statement should have disclosed that AEA had an informal, "handshake" agreement with defendant Greenberg regarding an increase in his compensation after the merger, *see* Complaint at ¶ 67, and an agreement with defendant Adler that his law firm would remain counsel to Loehmann's after the merger. *See id.* at ¶ 63. Defendants contend that, because the proxy statement disclosed that these agreements were expected to be made after the merger, omission of the fact that they were already made, if true, would not render the proxy statement false or misleading, and would not be material.

The law provides that shareholders are entitled to disclosure of all the material facts regarding the interests of and benefits to management and directors pursuant to a proposed transaction. *See, e.g., Lewis, supra,* 481 F.Supp. at 1203–04; *cf. Data Probe Acquisition Corp., supra,* 722 F.2d at 5. The Court agrees with plaintiff that the failure to reveal an actual agreement with Greenberg or Adler might be false and misleading, and that a jury might find this omission to be material.

 However, as defendants correctly note, plaintiff has failed to set forth adequate facts that the agreements he alleges actually existed, and these allegations are thus properly subject to dismissal. They may also be subject to sanctions pursuant to Fed.R.Civ.P. 11.[14]

Were this the only issue remaining in the case, the Court would feel constrained to grant the defendants' motion. However, given that discovery will proceed on the allegations regarding estate tax liability discussed above, the Court will permit these allegations to stand as well, so that the Court can determine with finality the merits of these claims.

## CONCLUSION

All claims against defendant Drexel are dismissed. With respect to the other defendants, the complaint is dismissed as legally insufficient, with the exception of (1) the allegations regarding the Loehmann family's estate tax obligations, and (2) the allegations concerning AEA's agreements with defendants Greenberg and Adler. The motions are denied with respect to those allegations as they may present issues of fact that must be determined at trial.

The parties shall complete all discovery regarding the remaining claims on or before October 31, 1985. A Pre-Trial Order shall be prepared in accordance with the Court's directions and shall be filed on or before November 30, 1985. All parties shall be ready for trial on January 1, 1986, and thereafter counsel for all parties shall be prepared to proceed to trial on twenty-fours hours' notice by the Court. A Pre-Trial Conference shall be held on November 15, 1985 at 10:00 A.M.

It is SO ORDERED.

F.Supp. at 1205–06; *Lewis v. Dansker,* 357 F.Supp. 636, 642–43 & n. 8 (S.D.N.Y.1974), *modified on other grounds,* 68 F.R.D. 184 (S.D.N.Y. 1975). Proxy materials also need not disclose that certain individuals or groups have an obvious personal interest such as continuing a business under a family name. *See, e.g., Rodman, supra,* 608 F.2d at 71. Therefore, these allegations are insufficient as a matter of law.

Plaintiff also alleges that defendants Stafford and Mack abstained from voting for directors in September 1980. *See* Complaint at ¶ 50. Defendants contend that even if true, there was no requirement to state this, as it is irrelevant to the December 1980 proxy solicitation regarding the AEA merger. Plaintiff does not even address this contention. The Court can see no reason why omission of this information would be either misleading or material with respect to the merger.

14. Plaintiff stated at his deposition that he simply inferred the existence of such agreements from the material disclosed in the proxy statement. *See, e.g.,* Mendell Deposition at 128–30, 197–202. This cuts against plaintiff's argument that the proxy statement was misleading in this regard.