**Ira L. MENDELL, on behalf of himself and others similarly situated, Plaintiff,**

**v.**

**George J. GREENBERG, Frederick R. Adler, James R. Swartz, Anita Loehmann Stafford, Donald H. Balleisen, Allan S. Gordon, Christopher D. Illick, Cecily C. Selby, Kenneth J. Thornhill, John D. Mack, AEA Investors Inc., LHI Inc., LH Investors Inc., Loehmann's Inc., and Drexel Burnham Lambert Incorporated, Defendants.**

No. 81 Civ. 3483 (JES).

United States District Court,
S.D. New York.

June 16, 1989.

Kaufman Malchman Kaufmann & Kirby, New York City, for plaintiff; Irving Malchman, of counsel.

Fulbright Jaworski & Reavis McGrath, New York City, for defendants George J. Greenberg, Frederick R. Adler, James R. Swartz, Allan S. Gordon, Christopher D.

authorities cited above, including the Third Circuit decisions, are more persuasive.

Illick and Cecily C. Selby; David C. Birdoff, Neil G. Sparber, Maria Savio, of counsel.

Kelley Drye & Warren, New York City, for defendants AEA Investors Inc., LHI Inc., LH Investors Inc., LH Holdings Inc. and Loehmann's Inc.; Arnold S. Klein, Kimberly Unger, of counsel.

Hughes Hubbard & Reed, New York City, for defendants Anita Loehmann Stafford and John D. Mack; Robert W. Brundige, Jr., Stuart Hendel, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

In this action, plaintiff Ira L. Mendell alleges that a proxy statement issued with respect to a merger between Loehmann's, Inc. ("Loehmann's") and a company organized and controlled by AEA Investors Inc. ("AEA") was false and misleading due to the misstatement or omission of material facts in violation of section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and Rule 14a–9, 17 C.F.R. § 240.14a–9. Defendants move for summary judgment and sanctions pursuant to Fed.R.Civ.P. 11, and plaintiff moves to conditionally strike defendants' motion and cross-moves for partial summary judgment. For the reasons that follow, defendants' motion for summary judgment is granted and all other motions are denied.

The facts relevant to this case which were stated in the Court's prior opinions will not be restated here. *See* 612 F.Supp. 1543 (S.D.N.Y.1985) ("*Mendell I*"); 113 F.R.D. 680 (S.D.N.Y.1987) ("*Mendell II*"). Briefly, in *Mendell I,* the Court dismissed the complaint in part, but refused to dismiss plaintiff's claims that the proxy statement was materially misleading in failing to disclose (1) that the Loehmann family shareholders had an urgent need for cash

to pay estate taxes and (2) that there were "handshake" agreements between the president of Loehmann's, George J. Greenberg, and AEA regarding an increase in his compensation and benefits after the merger. *See Mendell I, supra,* 612 F.Supp. at 1553–54. The defendants now contend that summary judgment must be granted as to those claims as well.[1]

## DISCUSSION

### I. *Urgent Need For Cash*

■ Charles Loehmann, the founder of Loehmann's, died in 1977. His wife, Mrs. Anita T. Loehmann, elected to have his estate taxes paid over a fifteen year period pursuant to 26 U.S.C. § 6166. Under this election, only the interest on Mr. Loehmann's estate taxes was due for five years, with the principal payable in ten annual installments. Mrs. Loehmann died in March of 1980. At this point, the Loehmanns' daughter, Mrs. Anita Loehmann Stafford ("Mrs. Stafford"), became the fiduciary of her parents' estates. She also had the option of electing the section 6166 deferral for Mrs. Loehmann's estate, which would have enabled the estate to pay interest for five years and then pay the principal in ten annual installments.

Defendants admit that the Loehmann family faced a cash shortfall because the aggregate amount of taxes owed by the estates exceeded the amount of liquid assets available to them by over four million dollars, *see* Defendants' 3(g) Statement at ¶¶ 37, 48, 50, 53, and plaintiff asserts that the shortfall was even greater than that stated by defendants. However, the deferral election under section 6166 was available to Mrs. Stafford, so that the principal due would not have to be paid for five years, although interest would be due dur-

---

1. The Court will assume for the sake of this motion that a reasonable shareholder could properly rely on the selling decision of a director and major shareholder as a factor in deciding to consent to the merger proposal, an issue not free from doubt. This is especially true since the financial situation of any shareholder, even a major shareholder, might dictate an investment decision based upon factors wholly unrelated to the merit of the merger proposal itself. Nevertheless, the Court accepted plaintiff's argument that because the Loehmann family recommended the merger, the financial facts surrounding Mrs. Stafford's decision could be material, *see Mendell I, supra,* 612 F.Supp. at 1553, and will not reconsider the correctness of that determination for purposes of this motion.

ing that period. Given that circumstance, even assuming that at some point in the future the estate might have to sell stock or use some other means to pay the deferred taxes, since *at the time* of the merger the principal on the estate taxes could have been deferred, no reasonable jury could conclude that at that time the Loehmann family had an urgent need for cash to pay estate taxes.[2]

Plaintiff's arguments that a deferral was not feasible because the estate faced the danger of high interest rates in the upcoming years and because the estate would lose a tremendous tax saving obtainable by selling the shares in a block if the estate taxes were not paid immediately are not persuasive. Even assuming arguendo that it would have been more profitable for the estate to sell the shares in a block and that tax benefits could thereby have been obtained, that circumstance could not rationally support an inference that there was an urgent need for cash and that Mrs. Stafford was so advised.[3]

Moreover, regardless of whether or not in fact there was an urgent need for cash there is absolutely no evidence that Mrs. Stafford was ever told of such a need. Mrs. Stafford's advisors testified that they never advised her that there was an urgent need for cash, and there is no evidence to the contrary. *See* Affidavit of Jeffrey S. Maurer ("Maurer Aff.") at ¶ 10; Affidavit of James G. Pressly, Jr. ("Pressly Aff.") at ¶ 6; Deposition of James G. Pressly ("Pressly Dep."), Plaintiff's Exhibit ("PX")

16 at 1340–41. It follows that no rational jury could find that Mrs. Stafford was ever in fact told that the estate had an urgent need for cash. In the absence of such proof there can be no genuine issue of material fact with respect to Mrs. Stafford's liability for a false and misleading statement.

There is evidence, which on this motion for summary judgment must be accepted as true, that *Greenberg* told Dr. Walter J. Henry that the Loehmanns were supporting the merger because they needed the money for estate taxes. *See* Deposition of Walter J. Henry, M.D., PX 12 at 779, 790–92. This evidence, however, would be admissible, if at all, only against Greenberg, as an admission. *See* Fed.R.Evid. 801(d)(2). In any event, it could not support any rational jury finding in plaintiff's favor even against Greenberg in light of all the other evidence establishing that there was in fact no urgent need for cash. In sum, Greenberg's erroneous belief that there was such a need is legally insufficient to establish a claim against him, especially in the absence of any proof that this factor was even considered by the Board of Directors in approving the merger. *See Berg v. First American Bankshares, Inc.*, 796 F.2d 489, 497 (D.C.Cir.1986). Therefore, summary judgment must be granted as to all defendants on the estate tax claim.

■ Plaintiff also cross-moves for partial summary judgment, asserting that the fact that the Loehmann estate would be

---

**2.** Plaintiff's assertion that the Loehmann family wanted to sell the Loehmann's stock all at once or not at all because selling the stock piecemeal could erode the family's control over the company, *see* Deposition of Jeffrey S. Maurer, Plaintiff's Exhibit ("PX") 21 at 1728–31; Deposition of James Pressly, PX 16 at 1188, 1276–78; Applications for Extension of Time to File U.S. Estate Tax Return and/or Pay Estate Tax dated May 4, 1978 and November 21, 1980, PX 37 at A2141–42, PX 98 at A2846–47; Letter from James G. Pressly, Jr. to Anita L. Stafford (Sept. 23, 1980), PX 67 at A2327, has no bearing upon whether there was an urgent need for cash to pay estate taxes and has even less relevance to whether Mrs. Stafford was told of that need. It therefore could not constitute a sufficient basis for a rational jury finding in plaintiff's favor on those issues.

In addition, plaintiff argues that Mrs. Stafford's statement that she considered diversifying her assets is contrived because she did not refer to diversification at her deposition. *See* Affidavit of Anita L. Stafford at ¶ 9; Deposition of Anita Stafford, PX 18 at 1426. However, whether she did or did not have such a desire has no relevance to whether in fact there was an urgent need for cash to pay estate taxes. *Cf. Rodman v. Grant Foundation*, 608 F.2d 64, 71 (2d Cir. 1979); *Mendell I, supra,* 612 F.Supp. at 1553.

**3.** The Court notes that it is not even now claimed, much less established, that the price paid for the stock was below the value of the stock at the time of the merger, although plaintiff has obtained discovery related to that issue. *See Mendell II, supra,* 113 F.R.D. at 682.

receiving a tremendous tax benefit if their stock were sold in a block was in itself a material omission as a matter of law. The Court has already ruled that the law does not require proxy materials to state that particular shareholders may have differing tax consequences flowing from a financial transaction and what those consequences are. *See Mendell I, supra,* 612 F.Supp. at 1553 n. 13. The Court adheres to that ruling. *See Lewis v. Oppenheimer & Co.,* 481 F.Supp. 1199, 1205 (S.D.N.Y.1979); *Lewis v. Dansker,* 357 F.Supp. 636, 642–43 (S.D.N.Y.1973), *modified on other grounds,* 68 F.R.D. 184 (S.D.N.Y.1975).

The cases relied on by plaintiff are legally and factually inapposite. These cases involved situations in which an insider was receiving a special benefit flowing from the merger itself or in which the merging corporation itself derived a tax benefit from the transaction. They were not cases in which the insider's tax benefit was obtained only because of that insider's particular financial situation. *See Chris–Craft Indus., Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 365–66 (2d Cir.1973); *Valente v. PepsiCo. Inc.,* 454 F.Supp. 1228, 1245 (D.Del.1978); *see also TBK Partners v. Shaw,* 689 F.Supp. 693, 700 (W.D.Ky.1988). Moreover, as stated in the Court's prior opinion, the proxy statement specifically advised shareholders to consider their own tax situation. *See Mendell I, supra,* 612 F.Supp. at 1553 n. 13. Therefore, plaintiff's cross-motion for summary judgment must be denied.

## II. *The "Handshake" Agreements*

■ Plaintiff has also failed to come forth, as he must, with any evidence sufficient to support a rational jury finding that there were any so called "handshake" agreements between Greenberg and AEA with respect to Greenberg's benefits and compensation prior to the time that the proxy statement was issued. There is thus no evidence to support his claim that the proxy statement falsely stated that

Neither Mr. Greenberg nor any other present director or officer of the Compa-

ny owns beneficially or will acquire an equity or debt interest in AEA, LHI, [LH] Holdings or [LHI] Investors.

*See* PX 101 at A2869. Plaintiff's claim of falsity rests entirely upon the fact that after the merger, Greenberg was permitted to purchase stock in LH Investors, Inc., *see* Defendants' 3(g) Statement at ¶ 80, which he asserts raises an issue of fact as to whether there was an agreement for this purchase prior to the merger.

However, the president of AEA testified that it was the policy of the company to offer stock incentives to management. *See* Deposition of Carl B. Hess, PX 1 at 35. In addition, internal documents from AEA indicate that the present management of Loehmann's would be offered certain benefits post-merger. *See* PX 82 at A2523; Plaintiff's Memorandum of Law dated June 3, 1988 at 31A–31B; *see also* Deposition of Ronald L. Kominski, PX 14 at 921–24.

While subsequent conduct may in some circumstances permit a rational inference of a prior agreement, that inference is impermissible where, as here, the subsequent offer of benefits is as consistent, if not more consistent, with the prior policy of AEA as confirmed by contemporaneous documents than it is with plaintiff's claim of a prior handshake agreement. In sum, plaintiff has to submit evidence sufficient to sustain a finding that his contention is more probable than the conflicting inference that the subsequent offer of benefits was the result of AEA's unilateral policy. That burden cannot be sustained where there is no direct proof of a prior agreement and the only circumstantial proof of such an agreement is subsequent conduct consistent with what AEA had, pursuant to its regular policy, planned to do.

Plaintiff next argues that the proxy statement falsely stated that Greenberg and AEA had not reached agreements on increased incentive arrangements for Greenberg. The proxy statement, after disclosing that Greenberg's contract as president and chief executive officer of Loehmann's would be continued after the

merger,[4] stated:

> It is also anticipated that following the consummation of the Merger, additional incentive arrangements may be established for Mr. Greenberg and other key employees which may consist of employment agreements, stock appreciation rights, performance related awards or other types of compensation. It is not expected that the exact nature and detail of these arrangements will be determined until several months after the Effective Time.

*See* PX 101 at A2869. However, this contention rests solely upon the circumstance that after the merger Greenberg was notified of an increase in his salary, which was later approved by the Board of Directors. *See* PX 113, 114. Yet that is precisely what the proxy statement said was contemplated after the merger and thus cannot constitute proof that there was any pre-merger agreement with respect to those later conferred benefits.

In addition, Greenberg's deposition testimony flatly refutes any such claim. Greenberg testified that he was "very desirous" of making sure that his associates and the store managers who had enjoyed benefits would continue to have them and that "some kind of management incentive program would be set in place." *See* Deposition of George J. Greenberg ("Greenberg Dep."), PX 8 at 582. Further, he stated that he and AEA "agreed, pretty much, that after the merger we would sit down and work out an appropriate plan, certainly not less than we got," and that AEA would "come up with a plan that would be acceptable and conducive to everybody's ability to continue to work and have an interest in the company." *See id.* at 582–83.[5] Thus, while it was expected that the parties would negotiate agreements after the

merger, no pre-merger agreements were made or contemplated.

Moreover, Greenberg and AEA employees have stated that Greenberg would not discuss his personal employment situation prior to the merger. *See* Affidavit of George J. Greenberg ("Greenberg Aff.") at ¶¶ 19–20; Affidavit of Carl B. Hess at ¶¶ 17–18; Affidavit of Michael Zalewski ("Zalewski Aff.") at ¶¶ 11–14. In addition, plaintiff has not controverted the evidence of post-merger discussions regarding the management incentive plan. *See* Greenberg Aff. at ¶¶ 23–25; Zalewski Aff. at ¶¶ 16–20; PX 109, 113. In view of these circumstances no rational jury could find that there was any prior agreement for increased compensation, much less an alleged "handshake" agreement between Greenberg and AEA.[6] Therefore, summary judgment must be granted with respect to that claim. *See Nemo v. Allen,* 466 F.Supp. 192, 195 (S.D.N.Y.1979).

### III. *Waiver of the attorney client privilege*

In opposition to defendants' motion for summary judgment, plaintiff moved to conditionally strike defendants' motion because the Pressly and Maurer affidavits submitted in connection therewith had waived an attorney client privilege previously asserted, and that plaintiff therefore should now be afforded access to documents to Mrs. Loehmann and Mrs. Stafford regarding stock in the estate which were previously withheld on grounds of privilege. *See* Pressly Aff. at ¶ 25; Maurer Aff. at ¶ 6. Although testimony as to part of a privileged communication may require production of the remainder or of other conversations on the same subject, *see In re Von Bulow,* 828 F.2d 94, 102–03

---

4. Greenberg testified that AEA had told him they "obviously would not be interested in making any kind of change and they would be interested in [his] continued employment in the company." *See* Deposition of George J. Greenberg, PX 8 at 582.

5. Greenberg also testified that he believed he was better off negotiating with AEA after the merger. *See* Greenberg Dep., PX 8 at 584.

6. The Court noted in its prior opinion that plaintiff stated at his deposition that he had no facts to support an agreement but merely inferred the existence of an agreement from the materials disclosed in the proxy statement. *See Mendell I, supra,* 612 F.Supp. at 1554 n. 14. As noted in *Mendell I,* given that testimony it is doubtful that the alleged omission could have been material to plaintiff's investment decision. *See id.*

(2d Cir.1987), here Maurer and Pressly were deposed on the issues raised in their affidavits,[7] *see* Pressly Dep., PX 16 at 1268–70, 1340–41; Maurer Dep., PX 21 at 1727–31; *see also* PX 30, 33, and either no attorney client privilege was asserted as to those issues or no questions were asked.

Nevertheless, out of an abundance of caution, the Court afforded plaintiff's counsel an opportunity to specifically indicate any instance in which an assertion of the privilege hindered his ability to prove that the estate had an urgent need for cash or that Mrs. Stafford was ever told of such a need. *See* Transcript dated October 14, 1988 at 20–21. Plaintiff requested production of the "many" documents to Mrs. Stafford which were withheld on the basis of attorney client privilege. *See* Letter from Irving Malchman to the Court (October 19, 1988); *see also* Pressly Dep., PX 16 at 1111. Defendants produced to the Court all documents from the time of Mrs. Loehmann's death to the merger which referred or related to estate taxes and were not produced on the ground of attorney client privilege. *See* Letter from Robert W. Brundige, Jr. to the Court (January 17, 1989).

The Court has reviewed these documents *in camera* and concludes that these documents could not support plaintiff's claim that there was an urgent need for cash or that Mrs. Stafford was told about such a need. It follows that their nonproduction can have no bearing on the defendants' motion and that plaintiff's application to conditionally strike defendants' motion must be denied.

## IV. *Rule 11 application*

■ Defendants have also moved for attorneys' fees pursuant to Fed.R.Civ.P. 11. Although the Court concludes that summary judgment must be granted for defendants, it does not find that plaintiff's arguments are so lacking in a colorable basis that Rule 11 sanctions are warranted. Therefore, the Rule 11 motion is denied.

7. Most of the information plaintiff seeks is irrelevant to the issues remaining in this case, such as the reasons for not selling stock in Mr. Loehmann's estate or a change in law firms for that estate.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted, all other motions are denied, and the complaint is dismissed. The Clerk of Court shall enter judgment accordingly and close the above-captioned action.

It is SO ORDERED.